IN THE MATTER OF JOHN P. FUSCIELLO, AN ATTORNEY AT LAW.

Argued September 11, 1979—Decided October 23, 1979.

*Ms. Colette A. Coolbaugh,* Secretary, argued the cause for the Disciplinary Review Board.

*Mr. Prospero DeBona* argued the cause for respondent.

PER CURIAM.

Respondent John P. Fusciello was admitted to the bar of New Jersey in 1963. This disciplinary proceeding against him is bottomed on charges of the misuse and mishandling of trust funds, failure to act competently and failure to maintain proper financial records. He has been under temporary suspension by order of this Court since December 13, 1977.

Evidence presented at the disciplinary hearing established the following:

### Bogart Matter

Respondent represented the buyers in the purchase of a residence in Colts Neck. A mortgage commitment was received from the Statewide Savings and Loan Association the amount of which, together with additional funds provided by the buyers, was turned over to respondent to be used by him to pay off an existing mortgage on the property in the amount of $77,000. Respondent, however, did not pay off the old mortgage. Instead, he misappropriated the $77,000, using it to satisfy preexisting overdrafts on his trust account.

### Lanigan Matter

Lanigan was injured in an accident in 1967. He and his wife retained respondent to institute suit. Although respondent told the Lanigans that suit had been instituted in federal court and was proceeding normally, he never filed suit and allowed the statute of limitations to run on the claim. Thereafter, he advised the Lanigans that the defendant's insurance carrier had

forwarded a partial settlement of $25,000 to respondent and that he had placed the money in his trust account. This representation by respondent was false, and the purported settlement a complete fiction. However, at the Lanigans' request respondent paid them a total of $6,000, supposedly out of the $25,000, as an advance on the settlement. Actually, the $6,000 payment was made out of trust funds belonging to other clients. To complete the charade, respondent notified the Lanigans that the case had been settled for $85,000 and delivered to them his trust check for $59,250 ostensibly representing their share of the settlement. Aside from the fact that there had never been a settlement, respondent knew that the Lanigan check would be dishonored since there were no funds in his account. The Lanigans have subsequently sued respondent for malpractice.

### Schneider Matter

Respondent represented Elizabeth Schneider and settled a claim of hers for $2,500 out of which she was to receive $1,500. Although respondent deposited the settlement check in his account, the client never received her share of the proceeds.

### Pugh Matter

Respondent represented a buyer in the purchase of real estate. At the closing, respondent received certain proceeds which he deposited in his trust account. He then issued a trust account check for $43,459.63 representing the balance of the purchase price and delivered it to the seller. The check, however, was dishonored when presented since the funds deposited had been used to cover other overdrafts on the account. Respondent eventually covered the draft with a loan from a friend after proceedings were instituted to set aside the sale.

In addition to the foregoing matters, there was evidence of a pattern of neglect in the handling of clients' cases and misuse of trust funds which extended over a period of several years. In some instances (estimated by respondent to be about eight) respondent had allowed the statute of limitations to run on

claims of clients without filing suit. He would then falsely advise the client that the case had been settled for a certain amount of money, obtain a release and pay the client out of trust funds belonging to other clients.

Respondent conceded that in April 1978 he was out of trust in the amount of $172,779.54. He estimated that approximately $80,000 of this could be attributed to the fictitious settlements mentioned above, $20,000 represented a loan to his brother and the balance was used by him to meet personal needs. Additional complaints against respondent are pending before the District Ethics Committee.

The Disciplinary Review Board (DRB), after reviewing the record, found that respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of DR1–102(A)(4), (5) and (6); DR7–101(A)(2) and DR9–102. It also noted respondent's admitted failure to maintain proper financial records as required by *R.* 1:21–6. The DRB recognized that respondent has made a substantial effort to make restitution to those whose funds he misappropriated, but it concluded that this could not in any way excuse respondent's conduct. It recommended that respondent be disbarred.

We agree. The picture presented is not that of an isolated instance of aberrant behavior unlikely to be repeated. Respondent's conduct over a period of years has exhibited "a pattern of negligence or neglect in his handling of legal matters." See DR6–101(A)(2). More importantly, however, he has demonstrated an egregious inability to handle trust monies in accordance with the high standards required of every attorney. DR1–102(A)(4)(5) and (6); DR9–102. The public must be protected against this kind of behavior. An order of disbarment is to be entered and respondent's name stricken from the roll.

So ordered.

*For disbarment*—Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*Opposed*—None.