IN THE MATTER OF JOHN V. GETCHIUS, AN ATTORNEY-AT-LAW.

Argued October 20, 1981—Decided January 29, 1982.

*Colette A. Coolbaugh,* Secretary, argued the cause for complainant Disciplinary Review Board.

*Joseph M. Keegan* argued the cause for respondent.

PER CURIAM.

In early 1980, the District II Ethics Committee and the Division of Ethics and Professional Services filed separate complaints charging respondent with multiple violations of the Disciplinary Rules of Professional Conduct. After conducting hearings in 1980, the District II Ethics Committee filed a multi-count presentment with the Disciplinary Review Board (DRB). Respondent was charged with violations of DR1–102(A)(4), (5), (6) (misconduct); DR2–110(A)(1) and (2) (withdrawal from employment); DR6–101(A)(2) (failing to act competently); and DR7–101(A)(2) (failure to represent a client zealously). On April 15, 1981 the DRB conducted a hearing, after which it recommended that respondent be suspended from

the practice of law for one year and that he not be readmitted until he proved he was capable of practicing law.

On September 28, 1981 we temporarily suspended respondent from the practice of law. We now adopt the findings of DRB but, for the following reasons, conclude respondent's conduct requires a suspension for two years.

At its hearing, DRB made the following findings:

### a. HARMON COMPLAINT

In August 1976 Kathleen Harmon paid a retainer of $300 to the respondent which he accepted for the purpose of instituting a divorce action on her behalf. Thereafter Mrs. Harmon incurred considerable difficulty in communicating with the respondent, who failed to advise her with respect to the status of her case and failed to respond to her numerous telephone calls and correspondence.

In April 1977 the respondent finally communicated with Mrs. Harmon by letter signed by him. Therein he enclosed a copy of a Complaint for Divorce and represented to the complainant that the Complaint had been filed and that a hearing date would be assigned in the near future. Later, in August 1977, the respondent submitted a bill to Mrs. Harmon requesting payment of fees and representing that certain costs had been incurred for the filing of a Complaint and service of Summons and Complaint. In fact, no Complaint had been filed by the respondent, no filing fees or Sheriff's fees had been incurred and there was no action pending for divorce.

At a formal hearing before the Committee on May 15, 1979, respondent admitted that he failed to file and serve the Complaint and that he did not incur the associated expenses for which he billed his client. Respondent claimed that he failed to act because he had not had his fee and costs paid in full. Respondent returned the $300 retainer after Mrs. Harmon filed her informal ethics complaint.

## b.  AMATO COMPLAINT

In August 1977, John Amato paid the respondent a retainer of $250 for the purpose of instituting a divorce action.  On August 21, 1978 the respondent wrote to the complainant enclosing a copy of a Divorce Complaint and indicated that it had been filed and forwarded for service upon the defendant.

Thereafter and for a period of several months the complainant encountered much difficulty in communicating with the respondent concerning the status of his case, as the respondent failed to return most telephone calls and was not available for consultation with the complainant.  At a formal hearing before the Committee on September 3, 1980 respondent admitted that he failed to institute suit on behalf of his client.  Respondent claimed that he failed to act because he had not had his fee and costs paid in full.  The Committee determined that the respondent deliberately failed to truthfully advise the complainant as to the status of his divorce action and improperly and falsely represented that a trial date would be assigned shortly when, in fact, no Complaint was ever filed by the respondent with the Court.

## c.  USHERSON COMPLAINT

Respondent was retained by Dorothy C. Usherson during July 1977 to represent her with regard to a Complaint for Divorce filed by her husband as plaintiff in New York State.  The respondent received a copy of the Complaint from the complainant and told her 'I'll look into it' and the complainant relied upon his investigation and representation in the pending divorce action.

Thereafter the complainant encountered considerable difficulty in communicating with the respondent who failed to advise her as to the status of the pending divorce action.  The complainant advised respondent that she wanted to assert a Counterclaim against her husband and wanted to seek support and alimony from him.  At a formal hearing before the Committee

on September 3, 1980 respondent admitted that he failed to enter a defense and countersuit. Respondent claimed that he was not retained in this matter, that he simply agreed to investigate the case, and that he felt Mrs. Usherson was better off receiving AFDC benefits rather than seeking child support and alimony from the husband.

The Committee determined that the respondent knowingly permitted the husband to obtain a Judgment of Divorce, failed to investigate the assets and income of the husband in order to assert a claim for support or alimony and failed to file a Counterclaim on behalf of his client, all contrary to the desires and best interests of the complainant.

### d. BUCKLEY COMPLAINT

The respondent was retained by Kim Buckley in April 1977 to represent her with regard to a divorce action on her behalf. An initial retainer of $110 was paid by the complainant to the respondent who agreed to represent the complainant. On May 15, 1977 complainant paid the balance of $290 for her divorce. The respondent caused a complaint to be filed on May 31, 1978, but never caused a Summons to issue and thereby permitted the Complaint to be dismissed for lack of prosecution.

At a formal hearing before the Committee held on September 3, 1980 respondent claimed that service had been difficult in this matter since complainant's husband moved out of state. Complainant testified, however, that she promptly supplied the respondent with her husband's change of address.

The Committee concluded that the respondent failed to communicate with the client and notwithstanding numerous inquiries by the complainant the respondent did not advise the complainant of the status of the case and specifically failed to advise her of the dismissal thereof for lack of prosecution. In addition, he failed to properly carry out his contract of employment with his client by permitting the case to be dismissed for lack of prosecution.

### e. JAMITITUS COMPLAINT

Respondent was retained by Kenneth Jamititus in the latter part of 1976 to dissolve a New Jersey corporation known as G. P. Inner Cote, Inc. and to form a new corporation to be known as Grand Prix Auto Service.

Thereafter, the respondent advised the complainant that the new corporation had been formed and further represented to the complainant that the corporation known as G. P. Inner Cote, Inc. was dissolved. In fact, none of these services were ever performed by the respondent thereby causing confusion, inconvenience and monetary damage to the complainant which still continues. The respondent failed to properly communicate with the complainant, failed to respond to numerous telephone inquiries, but when he did, ultimately, talk with the complainant he specifically told the complainant that the work requested had, in fact, been performed when he knew of the falsity of such representations.

At a formal hearing before the Committee on September 3, 1980 respondent claimed that he thought the work had been done and the corporation papers properly filed. Respondent offered no documentary evidence, however, to substantiate his claim.

The Committee concluded that the respondent made deliberate misrepresentations to his client, failed to carry out a contract of employment entered into with the complainant for professional services and engaged in other conduct that adversely reflects on his fitness to practice law.

### f. GALLUCIO COMPLAINT

Respondent was retained by one Josephine Gallucio in or about the month of June 1977 to represent her with regard to two traffic citations received in the Borough of Beach Haven, New Jersey. The respondent, by letter of June 28, 1977, advised the Municipal Court of the Borough of Beach Haven of his representation of Ms. Gallucio and thereafter continued to corre-

spond with the Court with regard to the pending hearing until August 1, 1978.

Although advised that bench warrants had been issued for his client's arrest, the respondent took no further action in the matter and, in fact, discontinued his representation of her without obtaining prior approval of his client or receiving permission from the Court.

Following a formal hearing on September 3, 1980 the Committee found that respondent had failed to carry out his contract for professional services with his client, had withdrawn from a court proceeding without permission of the tribunal and engaged in conduct which adversely reflected on his competence to practice law.

DRB determined that the conclusions of the District Ethics Committee were supported by clear and convincing evidence. Both the Committee and DRB found respondent guilty of neglect, failure to communicate with clients, failure to act competently, deceitful communications with clients and misrepresentations concerning the status of actions being handled on the clients' behalf, and failure to carry out contracts of employment with clients for professional services. Both the Committee and DRB found unpersuasive that during 1977–1978 respondent sustained injuries in two automobile accidents and has suffered from other physical and emotional disorders. DRB concluded that "[I]t is uncontroverted that respondent has flagrantly violated numerous disciplinary rules on various occasions." DRB found further that respondent's conduct "evidences significant disregard for the duties and responsibilities of an attorney-at-law of this State."

Respondent does not contest the findings in the *Jamititus* matter and acknowledges that he acted improperly in the *Harmon, Amato, Usherson,* and *Buckley* matters. After an independent review of the record, we conclude that the factual findings of DRB are correct and we adopt them. Respondent contends that he should receive a penalty no more severe than a reprimand. We disagree.

As we wrote recently in a similar matter, "[t]he picture presented is not that of an isolated instance of aberrant behavior unlikely to be repeated. Respondent's conduct over a period of years has exhibited a 'pattern of negligence or neglect in his handling of legal matters' ". *In re Fusciello*, 81 *N.J.* 307, 310 (1979) (citation omitted). *Fusciello* involved an attorney who misused trust funds, failed to act competently and failed to maintain proper financial records. He was disbarred.

While respondent's conduct does not involve the misuse of trust funds, the public must be protected from the systematic misconduct of attorneys. His conduct must be evaluated in light of the primary purpose of disciplinary proceedings, which is not punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession." *In Re Stout*, 75 *N.J.* 321, 325 (1978).

Respondent recently began treatment with a psychiatrist. Under all of the circumstances, we conclude that the appropriate discipline is to suspend respondent for two years from the date of his temporary suspension and until he submits medical proof that he is capable of practicing law. We direct further that respondent reimburse the Administrative Office for costs in this matter.

*For suspension*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*Opposed*—none.

### ORDER

JOHN V. GETCHIUS of Garfield having appeared before this Court on an order to show cause why he should not be disbarred or otherwise disciplined; and good cause appearing;

It is ORDERED that JOHN V. GETCHIUS be suspended from the practice of law for two years, effective September 28,

1981, and until the respondent can demonstrate satisfactory proof of his mental and physical capability to practice law and until further order of this Court; and it is further

ORDERED that the respondent continue to be restrained and enjoined from practicing law during the period of his suspension and that he continue to comply with all regulations of the Disciplinary Review Board governing suspended, disbarred and resigned attorneys; and it is further

ORDERED that JOHN V. GETCHIUS reimburse the Administrative Office of the Courts for costs in this matter.