IN THE MATTER OF THOMAS S. DI BIASI, AN
ATTORNEY AT LAW.

Argued February 18, 1986—Decided April 2, 1986.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*H. Curtis Meanor* argued the cause on behalf of respondent (*Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor,* attorneys).

PER CURIAM.

Respondent entered a plea of guilty to a federal accusation of misapplication of bank funds in violation of 18 *U.S.C.*

§ 657, an offense characterized as a misdemeanor under federal law. The court sentenced respondent to a suspended term of one year, three-years probation, and imposed a fine of $1,000.

Subsequently, the Office of Attorney Ethics made a Motion for Final Discipline Based Upon a Criminal Conviction pursuant to *R.* 1:20–6(b)(2)(i). Following oral argument, the Disciplinary Review Board agreed that respondent had engaged in illegal conduct that adversely reflected on his fitness to practice law and recommended that respondent be suspended. The members of the Board were not unanimous in their recommendation, the individual votes varying from one year to no suspension at all.

Our independent review of the record leads us to the conclusion that respondent has been guilty of unethical conduct in the matter charged.

First, we accept a criminal conviction as conclusive evidence of guilt in disciplinary proceedings. *In re Rosen,* 88 *N.J.* 1, 3 (1981). The underlying facts of the conviction are relevant to the determination of the appropriate discipline to be imposed. *Id.* at 3.

The circumstances of respondent's involvement are set forth in the record. He was the closing attorney for a partnership with respect to a $2.1 million mortgage loan covering a three-story building in Union City, New Jersey. A lease had been prepared by an accountant for the partnership that purported to show that a portion of the third floor was under a binding lease. This lease had been submitted to the lender before the respondent entered the matter.

Prior to the closing, the respondent learned that the lease was false. Nonetheless, he yielded to the request of his client not to reveal this fact to the lender on the grounds that the lease would soon become reality and that the lender was, in any event, relying upon the personal guarantee of the principals of the partnership.

The principles that we apply in cases of criminal convictions are as follows:

> Our goal in these hearings is to protect the interests of the public and the bar while giving due consideration to the interests of the individual involved. *In re Mischlich*, 60 *N.J.* [590] at 593. Similar to a sentencing judge in a criminal matter, we take into consideration many factors in determining the proper discipline to be imposed. *Cf. N.J.S.A.* 2C:44-1. We consider the nature and severity of the crime, and whether the crime is related to the practice of law. We consider "evidence which does not dispute the crime but which shows mitigating circumstances [relevant to] the issue of whether the nature of the 'conviction merits discipline and, if so, the extent thereof.' " *In re Mischlich*, 60 *N.J.* at 593 (citations omitted); *see In re Rosen*, 88 *N.J.* [1] at 3; *In re Mirabelli*, 79 *N.J.* [597] at 601; *In re La Duca*, 62 *N.J.* [133] at 136. Similarly, we consider evidence of an attorney's good reputation, his prior trustworthy professional conduct, and his general good character. *In re Mischlich*, 60 *N.J.* at 593.
>
> [*In re Infinito*, 94 *N.J.* 50, 57 (1983).]

In applying these principles to the underlying facts, we find that the relationship that gave rise to the offense did arise directly from a lawyer-client relationship and the offense was related to the practice of law. The crime is defined as a "serious crime" in our rules. *R.* 1:20-6(a)(2) defines "serious crime" as "any crime of the first or second degree as defined by the New Jersey Code of Criminal Justice * * * or any felony of the United States * * * or of any state * * *." In addition, we define as "serious crimes" any crime involving "interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, [or] theft * * *." *Id.*

Although this definition is contained in a provision dealing with automatic temporary suspension of attorneys convicted of crimes, it reflects our belief that crimes of dishonesty touch upon a central trait of character. In the context of application for admission to the bar, we have concluded that a bar applicant "must possess a certain set of traits—honesty and truthfulness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice." *Application of Matthews*, 94 *N.J.* 59, 77 (1983). These we described as the "fundamental norms that control the professional

and personal behavior of those who as attorneys undertake to be officers of the court." *Id.* at 78. We have long and firmly held that " '[i]n the legal profession, there must be a reverence for the truth.' " *Application of Jenkins,* 94 *N.J.* 458, 470 (1983) (quoting *In re Hyra,* 15 *N.J.* 252, 254 (1954)). Thus, we recently suspended, for a period of three years, an attorney who had pled guilty to making a misrepresentation on an affidavit filed in a cause. *In re Kushner,* 101 *N.J.* 397 (1986); *see also In re Labendz,* 95 *N.J.* 273, 274–75 (1984) (attempt to obtain mortgage for client from federally-insured lender through fraudulent alteration of real estate contract warrants one-year suspension). And when a crime of dishonesty touches upon the administration of justice, the offense is deserving of severe sanctions and would ordinarily require disbarment. *In re Verdiramo,* 96 *N.J.* 183, 186 (1984) (citing *In re Hughes,* 90 *N.J.* 32 (1982)).

In setting the appropriate discipline in this case, there are several factors, however, that mitigate in respondent's favor. First, although this crime was committed in 1978 and the plea taken in 1980, the disciplinary disposition has taken six years. This is due to no fault of respondent and involves unusual circumstances over which he had no control. In addition, during that time, he was suspended from practice before the United States District Court for the District of New Jersey for a 14-month period as a result of the judgment of conviction entered in that court. Finally, we take note of the relative youth and inexperience of this attorney at the time of these events. Although he had been admitted to practice for five years, he had little experience in handling closings and was assigned, on an emergent basis, the substantial responsibility of closing a transaction of $2.1 million. A review of the record demonstrates that some of the principals involved in this trans-action were unprincipled to an extreme degree and their repre-sentations were a significant factor in contributing to this result. Although the mortgage was substantial, the federal officials permitted the defendant to plead to an offense involv-

ing a misapplication of a sum not in excess of $100, a crime punishable under federal law by a maximum of $1,000 or one-year's confinement. 18 *U.S.C.* § 657.

The Board was satisfied, as are we, that respondent's offense was aberrational. He has an otherwise unblemished record. We nonetheless regard the infraction as serious and believe that the public and the profession will be best served by a period of suspension. We have been informed of other professional concerns with respect to the current status of respondent's employment, but we believe nonetheless that a period of suspension must be imposed.

As noted, however, there was no personal venality at work; neither respondent nor his law firm gained from his transgression. Here, as in *In re Barry*, 90 *N.J.* 286 (1982), respondent's employers did little more than throw a "warm body" into the midst of a reasonably complex, important (at least as measured by the dollars involved) transaction, with no guidance.

> The conclusion is inescapable that a considerable measure of blame for respondent's predicament must fall on the shoulders of the principals in the law firm that employed him, even though he does not seek to place it there. \* \* \* It is simply inexcusable to impose on a fledgling lawyer the total responsibility for clients' affairs without some regular supervision. It is not enough that the principals be available if needed. \* \* \* The "sink or swim" approach is ill-suited to a high volume professional operation.
>
> [*In re Barry, supra*, 90 *N.J.* at 292–93 (Clifford, J., dissenting).]

In view of all the circumstances, we believe that a period of three months is appropriate in this case.

We reiterate that crimes of dishonesty that touch upon the administration of justice will ordinarily warrant disbarment and crimes of dishonesty, especially those related to the practice of law, will ordinarily warrant extended suspension.

Respondent is suspended from the practice of law for three months and until further order of the Court. He is directed further to reimburse the Administrative Office of the Courts

for appropriate administrative costs, including the cost of producing transcripts.

So ordered.

### Decision and Recommendation of the
### Disciplinary Review Board

It is ORDERED that THOMAS S. Di BIASI of NUTLEY, who was admitted to the Bar of this State in 1972, be suspended from the practice of Law for three months, effective April 15, 1986, and it is further

ORDERED that THOMAS S. Di BIASI be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent reimburse Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.

*For suspension*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.