IN THE MATTER OF AARON R. STIER, AN
ATTORNEY AT LAW.

Argued June 23, 1987—Decided September 4, 1987.

*Robyn M. Hill,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Leo Kaplowitz* argued the cause for respondent (*Kaplowitz and Wise,* attorneys; *Leo Kaplowitz* and *Warren L. Fink,* on the brief).

PER CURIAM.

This disciplinary proceeding arose from a motion filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB), seeking final discipline of respondent, Aaron R.

Stier, pursuant to Rule 1:20–6. The motion was based on respondent's plea of guilty to the disorderly persons offense of tampering with public records, pursuant to *N.J.S.A.* 2C:28–7a(1). The DRB found that respondent has engaged in illegal conduct that adversely reflects on his fitness to practice law and has recommended that he be suspended from the practice of law for one year.

I

The respondent was admitted to the bar of New Jersey in 1969. In 1971 respondent's brother-in-law, Irwin Pine, a real estate investor, brought two real estate deals to the law firm with which the respondent was then associated. The relevant facts are set forth in the Decision and Recommendation of the DRB.

> Between December 1971 and January 1973, respondent was enticed into involvement in two real estate ventures by his brother-in-law. Both ventures involved the purchase and sale of apartment complexes, the first in Camden County and the second in Burlington County. During the course of both transactions respondent prepared and filed with the Registrar of Deeds in the respective counties documents reflecting inflated purchase prices. One showed a $1,275,-000 purchase price, whereas the actual sale price was $955,000; the other stated a purchase price of $1,000,000, whereas the actual sale price was $950,000. The new owner, Rendel Corporation, the designated corporate nominee of the law firm with which respondent was associated, resold the property shortly after purchasing it. The sale prices were based on the inflated purchase prices reflected in the false documents, which resulted in a substantial profit.
>
> The matter came to the attention of the then Central Ethics Unit in 1975. Central Ethics referred it to the Division of Criminal Justice of the Office of the Attorney General. In 1976 and 1977, the State Grand Jury returned two indictments against respondent, alleging violations of *N.J.S.A.* 2A:111–11, 2A:111–30 and 2A:111–39. On November 30, 1981, respondent entered a guilty plea to the disorderly persons offense of tampering with public records by making false entry in a document of record, received and kept by the government, in violation of *N.J.S.A.* 2C:28–7a(1). In return, the State agreed to recommend dismissal of the two indictments then pending against respondent. On that same day, the court sentenced respondent to a $500 fine and dismissed the two indictments.

II

A criminal conviction of an attorney is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–6(b)(1). The extent

of final discipline to be imposed is thus the sole issue to be determined in this proceeding. *R.* 1:20–6(b)(2)(ii). *Matter of Tuso,* 104 *N.J.* 59, 61 (1986); *Matter of Litwin,* 104 *N.J.* 362, 364–65 (1986); *Matter of DiBiasi,* 102 *N.J.* 152, 153 (1986); *Matter of Kushner,* 101 *N.J.* 397, 400 (1986); *In re Infinito,* 94 *N.J.* 50, 56 (1983); *In re Hughes,* 90 *N.J.* 32, 36 (1982); *In re Rosen,* 88 *N.J.* 1, 3 (1981).

In determining the appropriate discipline, we consider the nature and severity of the crime and whether the crime is related to the practice of law. Moreover, we examine such facts as respondent's good reputation, prior trustworthy professional conduct, and general good character. *Matter of Litwin, supra,* 104 *N.J.* at 365; *Matter of Kushner, supra,* 101 *N.J.* at 400–01 (1986); *In re Infinito, supra,* 94 *N.J.* at 57; *In re Mischlich,* 60 *N.J.* 590, 593 (1972).

Based on our independent review of the record applying the above criteria to this case, we agree with the DRB that respondent's conviction establishes that he has engaged in illegal conduct involving dishonesty and fraud that adversely reflects on his fitness to practice law. *DR* 1–102(A)(3) and (4).[1]

Respondent acknowledges that his offenses arose from the lawyer-client relationship and were directly related to the practice of law. *See Matter of DiBiasi, supra,* 102 *N.J.* at 154 and *Matter of Kushner, supra,* 101 *N.J.* at 401. Furthermore, he recognizes that each offense is a "crime of dishonesty" that is defined as a "serious crime" pursuant to Rule 1:20–6(a)(2). We have held that such "crimes of dishonesty touch upon a central trait of character" that members of the bar must possess. *Matter of DiBiasi, supra,* 102 *N.J.* at 154. We have repeatedly explained that "when a crime of dishonesty touches upon the

---

[1]Effective September 10, 1984, the Rules of Professional Conduct of the American Bar Association, as modified by this Court, govern the conduct of the members of the bar of this State. *R.* 1:14. Respondent's actions occurred prior to this date, and are consequently governed by the Disciplinary Rules then in force.

administration of justice, the offense is deserving of severe sanctions and would ordinarily require disbarment." *Matter of DiBiasi, supra,* 102 *N.J.* at 155 (quoting *In re Verdiramo,* 96 *N.J.* 183, 186 (1984)); *see In re Hughes,* 90 *N.J.* 32 (1982).

Nevertheless, we have recognized that even in proceedings involving "serious crimes" mitigating factors may justify imposition of sanctions less severe than disbarment or extended suspension. *See In re Labendz,* 95 *N.J.* 273 (1984) (suspending for one year respondent who instigated fraudulent misrepresentations to a federally insured lender for the purpose of obtaining a mortgage, noting his theretofore excellent reputation and unblemished record and lack of personal gain); *In re Silverman,* 80 *N.J.* 489 (1979) (suspending for a year and a half year respondent who filed a false answer with the bankruptcy court for the purpose of aiding his client to retain custody of certain assets of the firm in bankruptcy, noting his previously unblemished record and excellent reputation); *In re Schleimer,* 78 *N.J.* 317 (1978) (suspending for one year respondent who engaged in false swearing on an affidavit in a civil case, noting his forty years of unblemished service and declining practice due to age); *cf. In re Bricker,* 90 *N.J.* 6 (1982) (disbarring attorney who engaged in continuous course of conduct involving false swearing, fraud and deception in obtaining title to a number of valuable parcels of real estate); *Matter of Kushner, supra,* 101 *N.J.* 397 (suspending for three years attorney who knowingly made a false certification in court to avoid liability on a promissory note that he signed, despite outpouring of support for him by more than 200 professional colleagues and clients).

### III

In this case, respondent acknowledges his guilt. He requests, however, that we consider the following mitigating factors in imposing discipline: his youth and his inexperience as an attorney when he committed the crimes; his conviction of only a disorderly persons offense; the length of time (eleven

years) between the original indictment in 1976 and resolution of the disciplinary proceeding in 1987; the constant anguish and concern he and his family endured during that period; and his otherwise unblemished record as an attorney and his good reputation in the community.

Respondent relies primarily on *Matter of DiBiasi, supra,* 102 *N.J.* 152, to support his position that the DRB's recommendation of a one-year suspension is an excessive sanction. In *Matter of DiBiasi,* we suspended for three months a young attorney who learned immediately prior to a closing that the lease submitted by his client to the mortgage lender falsely represented that a floor of the building was leased. In that case, respondent had entered a plea of guilty to a federal accusation of misapplication of bank funds in violation of 18 U.S.C. § 657.

Indeed, there are similarities between this respondent and the attorney in *Matter of DiBiasi, supra,* 102 *N.J.* at 152. Both were young and relatively inexperienced when their acts of misconduct occurred. Nevertheless, unlike Mr. DiBiasi, who acted in an emergent situation, respondent acted in a deliberate fashion on two separate occasions over a two-year period to fraudulently misrepresent public documents. On the other hand, the entire period from Mr. DiBiasi's act of misconduct to the final disposition of disciplinary proceedings was eight years. In this case respondent's initial acts of misconduct occurred in 1971 and 1973, he was indicted in 1977, pled guilty in 1981 and will receive the final disposition of disciplinary proceeding in 1987. The entire unhappy episode extends over fourteen years. During that period of time respondent and his family have been subject to adverse publicity and protracted concern over the criminal and disciplinary proceedings.

The DRB recognized as mitigating factors that "respondent had been admitted to the bar for only two years when these infractions occurred. More importantly, the Board recognize[d] that it has been 10 years since the return of the indictments and

five years since respondent pleaded guilty to a disorderly persons offense." The DRB also recognized that respondent's conduct was analogous to the conduct of the respondent in *Matter of DiBiasi, supra,* 102 *N.J.* at 152, but it distinguished that case because it found that respondent in this case had a clear profit motive, which was absent in *DiBiasi.* At the hearing before this Court, however, it was clearly established that respondent was not an owner, investor, or participant in the real estate ventures at issue and did not receive any monetary profit from the real estate sales, other than his legal fee and the nonmonetary benefits that accrue to any new associate from bringing to his law firm new and substantial clients.

Moreover, we were presented with evidence not previously submitted to the DRB, that since his misconduct in the early 1970's respondent has achieved a good reputation for service to his community. Furthermore, respondent's crimes well antedated our decision in *In re Verdiramo, supra,* 96 *N.J.* 183. *See Matter of Litwin, supra,* 104 *N.J.* at 370 (O'Hern, J. concurring).

We have long recognized that the goal of disciplinary matters is to foster confidence in the bar, and not to punish the lawyer. *Matter of Litwin, supra,* 104 *N.J.* at 365; *Matter of Kushner, supra,* 101 *N.J.* at 400; *In re Infinito, supra,* 94 *N.J.* at 57. Likewise, "we are impelled to consider the efficacy of any sanction in light of the amount of the time that has passed since the ethics complaint." *Matter of Kotok,* 108 *N.J.* 314, 330 (1987). In *Matter of DiBiasi, supra,* 102 *N.J.* at 155, we recognized as a mitigating factor the extended length of time between the date the infraction occurred and its final disciplinary disposition. Similarly, in *In re Verdiramo, supra,* 96 *N.J.* at 187, we noted that the respondent's offense of obstruction of justice by attempting to influence a United States grand jury witness occurred eight years before disciplinary proceedings, and that therefore "the public interest in proper and prompt discipline [was] necessarily and irretrievably diluted by the

passage of time. Discipline would [have been] more vindictive than just."

In *Matter of Kotok, supra,* 108 *N.J.* at 330–331 we concluded, based on "considerations of remoteness," that the goals and purposes of discipline would not be furthered by imposing a one-year suspension on an attorney whose offenses occurred ten years before, when he had just entered the legal profession. During the intervening ten-year period the attorney had gained professional skills and experience so that the rehabilitative goal of discipline would not be advanced by the suspension. Nevertheless, we recognized the seriousness of respondent's offense. Hence, in *Matter of Kotok,* for the first time we imposed on a respondent a probationary sanction "embracing suitable conditions designed to further the goals and purposes of the attorney disciplinary system." *Id.* at 331. Probationary sanctions have been specifically approved by the American Bar Association, as an alternative to traditional attorney discipline, AMERICAN BAR ASSOCIATION CENTER FOR PROFESSIONAL RESPONSIBILITY, STANDARDS FOR IMPOSING LAWYER SANCTIONS (1986), and recognized in other jurisdictions. *Matter of Kotok, supra,* 108 *N.J.* at 332.

Based on our review of the record, we find that a probationary sanction similar to that imposed on the respondent in *Matter of Kotok* is appropriate in this case. We find that respondent is guilty of illegal conduct that adversely reflects on his fitness to practice law. Nevertheless, we are mindful that such transgressions occurred fourteen years ago, and that in the intervening years respondent's record as an attorney has been unblemished and that his service to the community has been exemplary.

Accordingly, we hold that an imposition of a one year term of suspension is suspended, and respondent is placed on probation for the length of the term of suspension from practice, namely, one year. The condition of probation shall be that respondent must perform legal services of a community nature consisting

of the equivalent of one-day per week. These services shall be performed under the supervision of the Office of Attorney Ethics. Such services shall be rendered on behalf of Legal Services or, upon application to the Office of Attorney Ethics, a comparable community services organization. Upon the satisfactory performance of the terms of probation, respondent's probation shall be discharged.

Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs, including the production of transcripts.

So ordered.

*For probation*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

This matter having come before the Court on the recommendation of the Disciplinary Review Board for the final discipline of AARON R. STIER of LINDEN, who was admitted to the bar of this State in 1969, and the Court having concluded that the goals and purposes of discipline will not be advanced by imposing the discipline otherwise warranted here because of considerations attendant to the remoteness in time of his transgressions, and the Court having determined that AARON R. STIER's conduct underlying his disorderly persons conviction in 1981 for tampering with public records would otherwise warrant a one-year suspension from the practice of law; it is

ORDERED that the imposition of a one-year term of suspension is suspended; and it is further

ORDERED that AARON R. STIER is placed on probation for one year with the condition that he perform legal services of a community nature consisting of the equivalent of one-day per

week with such services to be performed under the supervision of the Office of Attorney Ethics and to be rendered on behalf of Legal Services, or upon application to the Office of Attorney Ethics, a comparable community service organization; and it is further

ORDERED, upon the satisfactory performance of the terms of probation, AARON R. STIER's probation shall be discharged; and it is further

ORDERED that AARON R. STIER reimburse the Ethics Financial Committee for appropriate costs, including the production of transcripts.