IN THE MATTER OF RAYMOND H. LEAHY, AN ATTORNEY AT LAW.

Argued September 28, 1987—Decided July 15, 1988.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Thomas J. Smith, Jr.,* argued the cause for respondent (*Smith and Shaw,* attorneys).

PER CURIAM.

The District IX (Monmouth County) Ethics Committee (the local Committee) filed a presentment charging respondent, Raymond H. Leahy, with having engaged in unethical conduct in 1978. The charges generally involved respondent's failure to maintain separate accounts and his misuse of client funds entrusted to him. On review, the Disciplinary Review Board (DRB) found respondent to be "in flagrant disregard" of *Rule* 1:21-6, requiring the maintenance of separate business and trustee accounts, and of *DR* 9-102, calling for the preserving of the identity of client funds and property. (The ethical infractions having occurred in 1978 and the Rules of Professional Conduct not having become effective until September 10, 1984, respondent's conduct is measured against the Disciplinary Rules in effect at the time of the misconduct.) The DRB concluded that respondent was guilty of knowing misappropriation of his client's funds, but because the misconduct preceded our decision in *In re Wilson,* 81 *N.J.* 451 (1979), which would

ordinarily warrant disbarment, the DRB unanimously recommended a two-year suspension from the practice of law, citing *In re Smock*, 86 *N.J.* 426 (1981).

On his appeal to this Court respondent does not dispute the finding of ethical misconduct, which is borne out by our own independent review of the record. Rather he focuses on the discipline to be imposed, and submits that a public reprimand and a period of community service would be in order. For that result he relies on *In re Stier*, 108 *N.J.* 455 (1987), and *In re Kotok*, 108 *N.J.* 314 (1987). The Office of Attorney Ethics (OAE), recognizing the disparity in penalties imposed for misappropriations adjudicated before the *Wilson* decision, takes the position that although suspension is required, the period thereof is difficult to pinpoint. The OAE goes no further than to acknowledge that two years is "in the ballpark."

In the course of his representation of one Dominic Blumetti in a divorce proceeding respondent came into possession of $13,738.50, representing the partial proceeds of the sale of a tavern. The funds were included in the marital assets, the division of which was the subject of dispute in the divorce proceedings. On January 25, 1978, respondent deposited the funds in his business account and, with the consent of Mrs. Blumetti's lawyer, issued Blumetti a check drawn on his business account in the amount of $6869.25, representing half of the proceeds. Although the other half should have remained in respondent's business account, in fact on the day Leahy issued his check to Blumetti, the total balance in the account was $10,760.49, which means that when the check cleared, the balance, which should have been about $6870, would be only $3881.24. The only rational explanation for this state of affairs is that respondent had already invaded his client's funds.

Because a dispute arose over the handling of the divorce case, Blumetti discharged respondent and retained new counsel. In due course, and in keeping with the final judgment of divorce, that lawyer asked Leahy to transfer the funds—the

remaining half of the $13,738.50—that he had been holding for Blumetti for about four months. As was later discovered, during that period the highest balance in the account was $2761.48 and the lowest balance was a $634.10 overdraft. The funds, therefore, were not in respondent's account to transfer.

Confronted with that dilemma Leahy immediately sought to rectify the situation: he obtained a $20,000 home improvement loan from a bank and deposited about $16,000 of those funds into his attorney business account. Shortly thereafter he issued a check to Blumetti for $6494.25. Leahy arrived at that figure by deducting $375, representing outstanding legal fees, from the remaining half of the funds he had been holding for his former client. (Leahy claimed Blumetti owed him $1000 in fees but had assured him that the remainder over $375 would be paid later.) On the face of the check appeared the typewritten words "Trust Account," even though it was drawn on respondent's business account.

A dispute arose over the outstanding legal fees. Blumetti refused to pay. Respondent sued. Blumetti failed to answer or appear. Respondent was awarded judgment, and then moved, successfully, for an order permitting him to levy against Blumetti's bank account. Blumetti filed an ethics complaint charging Leahy with various infractions arising out of the handling of the marital action. The local Committee conducted a hearing and concluded that Blumetti's complaints were groundless.

Significant events following on the heels of this first ethics hearing may be extracted from the DRB's Decision and Recommendations:

During the course of that hearing, however, a question arose concerning respondent's handling of Blumetti's funds. Respondent was requested to produce his trust account records for 1978. Respondent first informed the committee that the records were in his automobile. A recess was taken so respondent could retrieve them. When respondent returned to the hearing room, he reported his automobile had been burglarized and the records had been stolen. The committee then requested a full audit.

The audit report was issued on October 12, 1984. It revealed the following:

1. Respondent deposited Blumetti's money in his operating account. The money was never transferred from the account. Moreover, beginning in February 1978, the total balance in respondent's operating account was always less than $13,738.58.

2. Respondent opened a trust account on February 2, 1979. No records indicating the existence of a trust account for 1978 were found.

3. Money from a real estate closing was deposited in respondent's trust account in 1981. Several disbursements were made. The last check was made payable to respondent and resulted in an overdraft of $112.30.

The auditor concluded that respondent had invaded clients' funds for his own use and that respondent maintained no trust account during 1978, thereby violating DR 9-102(B)(3) and (4) and DR 9-102(C).

A second hearing before the district ethics committee was held on January 8, 1985. Respondent testified that in 1974 he opened a trust account in the same bank wherein he had a business account. Although he did not remember when, he testified that he had closed the trust account, because the bank confused the two accounts, which had consecutive numbers, and because his practice was not one which consistently demanded use of a trust account. He conceded that he did not immediately open a trust account with another bank. Respondent claimed he did have a trust account for at least some period of time in 1978. He was unable to support this assertion because his trust records for 1978 had been stolen. Nonetheless, respondent acknowledged that Blumetti's funds were deposited and maintained in his business account.

Although the record did not establish with certainty when respondent closed his first trust account, the committee concluded that he did not maintain such an account during 1978. Moreover, Blumetti's funds were deposited in respondent's business account. Respondent thereby violated DR 9-102(A), (B)(3) and (4) and (C). An even more egregious violation, however, was respondent's use of Blumetti's funds for his own purposes, also in contravention of DR 9-102. The committee also found that respondent's actions in 1981 in issuing a check payable to himself for legal fees that resulted in an overdraft of approximately $110 was a bookkeeping error and was negligent, but was not a knowing misappropriation.

On the basis of the foregoing record the DRB concluded, as do we after our independent canvass of the same record, that the finding of respondent's unethical conduct is supported by clear and convincing evidence. Specifically, Leahy failed to maintain a trust account during 1978; he improperly commingled his trust funds with his business funds; his business account did not maintain a balance sufficient to cover the amount of money he was holding for his client; and he knowingly invaded his client's funds. Because respondent does not attack these conclusions, we dwell on them no longer than to

observe that respondent was continuously out of trust for more than ten months; that when Blumetti's funds—almost $14,000 —were first deposited in respondent's business account on January 24, 1978, the balance before the deposit was only $752.99, up from $80.59 at the end of December 1977; that in the subsequent three weeks respondent issued checks totalling nearly $4000 in general operating expenses; and that from January to November 1978, all deposits, with a single exception of one for $2458 in May, were for less than $1000. The DRB concluded, and we agree, that although Leahy may not have been aware of the precise amounts of money yielded by his various invasions of Blumetti's funds, he surely knew that he was using his client's funds for his own purposes.

The DRB pointed out that were this not a pre-*Wilson* case of knowing misappropriation, disbarment would almost certainly be the result. Here, however, in keeping with *In re Smock, supra*, 86 *N.J.* 426, the DRB "evaluated other factors that might call for discipline less than disbarment," and recommended suspension for two years. It summarized those factors as follows:

> Respondent argued that the use of Blumetti's funds was an isolated, single infraction. The underlying offense was the only ethical infraction sustained against respondent, who was admitted to the bar in 1959. Moreover, once he learned he had used the funds, he immediately borrowed enough money to pay the client. The client, therefore, was not harmed. Since the incident with Blumetti's funds, respondent has complied with all trust account requirements by opening a separate trust account and segregating clients' monies. As the committee concluded, the single subsequent transaction that resulted in a minor $112.30 overdraft was simply an oversight and negligent. Furthermore, respondent's misconduct occurred eight [now more than ten] years ago. The public interest in proper and prompt discipline is thereby diluted. Finally, respondent presented character testimony demonstrating his good reputation in the community, his long term involvement with the alcohol rehabilitation program of the New Hope Foundation at Marlboro State Hospital, and his many hours of *pro bono* legal work for recovering alcoholics.

We are impressed by the same factors that moved the DRB to recommend a period of suspension rather than disbarment. Respondent caused his client no harm. He has straightened out his bookkeeping practices. His record of community ser-

vice bespeaks a selfless dedication to assisting those struggling to achieve and maintain sobriety. The misconduct occurred over a decade ago.

We cannot, however, overlook the extremely serious nature of respondent's misconduct in appropriating for his own purposes a client's money in his safekeeping. Anything short of a period of suspension would be disproportionate to the offense. Our decisions last term in *In re Kotok, supra,* 108 *N.J.* 314, and early this term in *In re Stier, supra,* 108 *N.J.* 455, are of limited assistance to respondent. True, in each case we suspended imposition of a one-year term of suspension and ordered a period of community service because of "considerations attendant to the remoteness in time" of the transgressions, *Kotok, supra,* 108 *N.J.* at 333; *Stier, supra, id.* 108 *N.J.* at 462; but other features draw a clear distinction between the circumstances of those proceedings and the situation here. Serious as Kotok's and Stier's transgressions were, neither involved misappropriation of client funds, and, unlike the experienced and seasoned respondent here, both Kotok and Stier were fledgling lawyers at the time of their misdeeds. We caution against wide-scale reliance on the decisions in their cases; whatever precedential effect may be accorded them is certain to be given sparingly and only in closely analogous circumstances.

Our conclusion in this proceeding is that the interest of the public, the bar, and the respondent will best be served by our suspending respondent from the practice of law for one year. He will, as well, reimburse the Ethics Financial Committee for appropriate administrative costs, including the cost of production of transcripts.

So ordered.

*For suspension for one year*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and ARNOLD M. STEIN–7.

*Opposed*—None.

## ORDER

It is ORDERED that RAYMOND H. LEAHY of SEA GIRT, who was admitted to the bar of this State in 1959, be suspended from the practice of law for a period of one year, effective August 1, 1988, and until further order of the Court; and it is further

ORDERED that RAYMOND H. LEAHY reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that RAYMOND H. LEAHY be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that RAYMOND H. LEAHY comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.