IN THE MATTER OF VICTOR J. CAOLA, AN
ATTORNEY AT LAW.

Decided September 6, 1989.

## ORDER

This matter having been submitted to the Court on the report of the Disciplinary Review Board recommending that VICTOR J. CAOLA of BRICK TOWNSHIP, who was admitted to the bar of this State in 1980, be publicly reprimanded for sending out to a prospective client a solicitation letter containing misrepresentations of respondent's background and experience as a criminal defense attorney, in violation of *RPC* 7.1(a)(1); and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and VICTOR J. CAOLA is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file

of said VICTOR J. CAOLA, as an attorney-at-law of the State of New Jersey; and it is further

ORDERED that VICTOR J. CAOLA reimburse the Ethics Financial Committee for appropriate administrative costs sustained by the Committee on Attorney Advertising and the Disciplinary Review Board.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board*

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon a presentment filed by the Committee on Attorney Advertising (hereinafter CAA) pursuant to *R.* 1:19A–4 (e). The facts as found by the CAA are as follows:

On or about August 28, 1987, Respondent drafted and caused to be sent to a police detective (hereinafter referred to as recipient) residing in Oakhurst, New Jersey, a solicitation letter offering respondent's legal services. At the time this letter was drafted and sent, respondent was aware that recipient was under criminal indictment. In fact, respondent made specific reference to the indictment in the letter and offered his services as a criminal defense attorney.

In the body of the solicitation letter, respondent made the following statements regarding his background and experience:

This firm has defended indictments in all the major drug cases in the last nine years, as well as representing the Bricktown Fire Department in their [sic] recent arson indictments. We have also defended the Bricktown Police Department in their [sic] extortion and theft matters.

The statements contained in said paragraph were false and misleading. Specifically, on August 28, 1987, respondent, who at all times relevant hereto was a sole practitioner, had been a member of the bar for seven years and two months. Consequently, neither respondent nor "the firm" could have "defended indictments in all the major drug cases in the last nine years ..." Additionally, at the time the letter was written, respondent had represented individual defendants in only three, not all, of the drug related cases in Monmouth and Ocean counties that, by his definition, could be considered "major."

Moreover, respondent has never represented the Brick Township Police Department or Fire Department. In fact, at the time the letter was written, respondent had never represented a single member of the police department and had represented only one member of the fire department on arson charges.

Respondent acknowledged that he engaged in puffery, but insisted that he had not attempted to mislead or deceive the officer.

> There was not a deliberate misrepresentation. If you ask me if I was trying to build up my credentials and if you're asking me if I wanted the case, certainly I'm going to admit that. If you are asking me did I deliberately try to mislead this officer, the answer is no, I did not. [IT8–18–22].[1]

When asked whether he stood by the statements made in the solicitation letter, respondent replied, "[n]o, some of those statements are misrepresentations, but they weren't meant to intentionally [deceive]. It was more or less like an advertisement, not an intent to deceive." [1T10–24 to 11–1].

The complaint alleged that respondent improperly engaged in written communication involving direct contact with a prospective client concerning a specific event when such contact was significantly motivated by potential pecuniary gain in violation of *RPC* 7.3(b)(4). The complaint further alleged that respondent engaged in false and misleading advertising in violation of *RPC* 7.1(a)(1).

Following the hearing, the CAA found by clear and convincing evidence that respondent had engaged in false and misleading advertising contrary to *RPC* 7.1(a)(1). The committee further found that, although respondent's communication did involve "... direct contact with a prospective client concerning a specific event (which had) pecuniary gain as a significant motive," *RPC* 7.3(b)(4), that specific conduct could not be held to be unethical given the recent case of *Shapero v. Kentucky Bar Association*, 486 *U.S.* 466, 108 *S.Ct.* 1916, 100 *L.Ed.*2d 475 (1988). In *Shapero*, the Court ruled that, based on the First and Fourteenth Amendments of the Constitution, a state cannot categorically prohibit lawyers from soliciting legal business for pecuniary gain by targeted direct mail. The charge of violation of *RPC* 7.3(b)(4).[2] was therefore dismissed by the CAA.

Based upon its finding of violation of *RPC* 7.1(a)(1), the CAA, in accordance with *R* 1:19A–4(e), recommended that the respondent be publicly reprimanded.

---

[1] IT denotes transcript of hearing before the CAA panel on October 4, 1988.

[2] The CAA has advised the Board that it has submitted a proposed revision of *RPC* 7.3(b)(4) to the Court to conform the rule to *Shapero*.

## CONCLUSION AND RECOMMENDATION

In considering the report of the CAA, the Board accepts the facts found as conclusive. *R* 1:19A–4(f). The only issues before the Board are whether the Board agrees that respondent is guilty of unethical conduct, and, if so, the extent of final discipline to be imposed. *Id.*

The Board concurs with the CAA's analysis of this case. It is patently clear that respondent engaged in unethical conduct in violation of *RPC* 7.1(a)(1) when he made false and misleading written statements to a prospective client. His solicitation letter contained a number of misrepresentations concerning both his background and his experience as a criminal defense attorney. Although he had been practicing law for only seven years, the solicitation letter claimed nine years of experience. While one might view this as a simple typographical error, his later misstatements in that same letter belie that possibility. Respondent had not represented either the Bricktown Fire Department or the Bricktown Police Department. In fact, he had represented only one fireman on arson charges, and had never represented even one police officer. These statements go beyond puffery or hype, and constitute actual and intentional misrepresentations of fact.

The CAA analyzed respondent's misconduct thusly:

> The rules governing attorney advertising are designed to prevent harm and protect consumers. *See Ohralik v. Ohio State Bar Ass'n,* 436 *U.S.* 447, 463–64, 98 *S.Ct.* 1912, 1922–23, 56 *L.Ed.*2d 444 (1978). When a consumer chooses a lawyer through the advertising process, he/she has a right to expect that the lawyer possesses the background and experience claimed. Misleading advertising, such as respondent's solicitation letter, creates a danger that consumers will make uninformed or illadvised choices of counsel.

> The retention of legal counsel is fundamentally different from the purchase and use of ordinary consumer products. *See Petition of Felmeister & Isaacs,* 104 *N.J.* 515, 536–37 (1987). The choice of an attorney is far more important than that of a laundry detergent or household appliance. Legal representation may affect a consumer's basic rights and possibly have serious long-term

consequences. Therefore, a consumer is more likely to be swayed or influenced by an attorney's advertisement than that of a consumer products manufacturer.

The committee continued:

> Respondent admits that he authored and caused the solicitation letter to be sent to recipient. Although he denies any deliberate attempt to mislead recipient, he fully accepts responsibility for the contents of the letter and apologizes for any problems it might have caused. Respondent's contrition and admission of wrongdoing are mitigating factors in his favor. *In re Rosenthal,* 90 *N.J.,* 12, 17 (1982); *In re Horan,* 78 *N.J.* 244, 247 (1978).

> Respondent may categorize each individual misrepresentation as relatively minor. However, when viewed in their totality, the misrepresentations render respondent's conduct more serious than would otherwise be the case.

Discipline is imposed, not to punish the offender, but to protect the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession. *In re Getchius,* 88 *N.J.* 269, 276 (1982), citing *In re Stout,* 75 *N.J.* 321, 325 (1978). Mitigating factors are relevant and may be considered in assessing the quantum of discipline to be imposed. *In re Hughes,* 90 *N.J.* 32, 36 (1982).

Here, even though respondent's false and misleading advertisement did not harm any client or prospective client, discipline is required given the danger created by his blatant misrepresentations. Despite respondent's apologetic attitude and contrition for his unethical conduct, a requisite majority of the Board concurs with the CAA's recommendation that respondent be publicly reprimanded. One member opposed, voting instead for a three-month suspension based on the extent and nature of the lies concerning the respondent's claimed representation of the police and fire departments in the solicitation letter.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs sustained by the CAA and the Board.

Dated: July 19, 1989

s/  Raymond R. Trombadore
Raymond R. Trombadore
Chair
Disciplinary Review Board

