722 A.2d 933

IN THE MATTER OF ROBERT E. RIVA, AN ATTORNEY AT LAW.

Argued September 28, 1998—Decided February 5, 1999.

*Lee A. Gronikowski,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Robert E. Riva,* argued the cause *pro se.*

PER CURIAM.

This attorney discipline matter arises from a Report and Recommendation of the Disciplinary Review Board (DRB) that respondent be publicly reprimanded. Three members of the DRB concluded that a public reprimand would be insufficient discipline and recommended a three-month suspension. The majority recommendation is based on findings of the District VB Ethics

Committee (DEC), concurred in by the DRB, that respondent had been guilty of gross neglect, a violation of *RPC* 1.1(a), and a lack of diligence, a violation of *RPC* 1.3. The misconduct involved the failure to file a timely answer to a complaint against his clients and his subsequent failure to act with necessary diligence to vacate a default entered on the complaint. Respondent also failed to communicate with his clients in a timely manner and misrepresented the status of the matter.

Respondent does not deny the essential facts but asserts that the conduct resulted from a misunderstanding that his adversary had withdrawn the complaint and his failure to have received notice of the proposed default judgment. Respondent contends that the Court should not follow the DRB's recommendation that he be publicly reprimanded.

Based on our independent review of the record, we find clear and convincing evidence that respondent engaged in conduct proscribed by *RPC* 1.1(a) and *RPC* 1.3, and that a public reprimand is warranted.

I

The matter involves respondent's representation of Robert Palceski and his wife Janet, who owned a company against which a former employee threatened to file an employment-practices claim. The disgruntled employee had hired an attorney in 1992. Respondent told that attorney that if the employee sued, the employer would file a counterclaim based on alleged financial improprieties engaged in by the employee. That attorney did not file an action. The employee hired a new attorney.

In January 1993, the new attorney served a summons and complaint on the employer. The employer retained respondent again. After some modification of the documents, respondent obtained a stipulation to extend the time for filing an answer to the complaint.

Respondent never filed the stipulation or the answer and counterclaim. Although he testified that his conversation with the employee's attorney led him to believe that she would voluntarily dismiss the matter, the adversary testified that she had never made such a statement because her client was "adamant" about pursuing the claim. Meanwhile, respondent had told the Palceskis that he had filed the answering papers and that, because he had heard nothing further from opposing counsel, the case would just "go away."

The employee's attorney said that she called respondent several times and left a number of messages on his answering machine between March and May 1993 to determine whether respondent intended to file an answer to the complaint. She eventually learned by calling the court that respondent had never filed an answer on behalf of his client.

In May 1993, the employee's attorney obtained an order entering default. Her transmittal letter to the court and an affidavit of service prepared by her secretary indicated that the request for entry of default and a copy of the proposed default order had been sent to respondent by regular mail. Respondent denied receiving them.

The court entered a default judgment against the employer for $1.7 million in September 1993. A court officer seized the trucks, tools and bank accounts of the employer. A constable sought to seize the personal cars and other assets of the Palceskis.

Robert Palceski telephoned respondent while the constable was at his home. Respondent assured him that he would go to court the next day to have their assets returned to them. He went to the Palceskis' home that evening to obtain copies of the papers served on them to prepare an emergent motion to vacate the default and assured them that he was working on the motion. The Palceskis asked for a copy of the motion, but respondent "put them off." It was only when Robert Palceski threatened to drive to respondent's office to pick up a copy of the motion that respondent agreed to fax him a copy. The faxed copy consisted of

fourteen blank pages. When later asked about the blank pages, respondent stated that he might have put the pages in the machine backwards or improperly transmitted the document.

When respondent went to court two days later, he was only able to obtain the release of the Palceskis' trucks and tools. (Respondent contends that the default judgment improperly included a business entity not named in the original complaint.) Although respondent filed a later motion to vacate the default in full, the trial court held that respondent's papers were deficient and that additional information was needed to set forth a meritorious defense to the claim.

From September through December 1993, respondent told the Palceskis on a number of occasions that he was consulting with other attorneys and conducting research on their defense. By the time that the court considered the motion again in December, the Palceskis had retained a new attorney. It was several weeks before respondent turned over the file. The only papers in the file were the motion to vacate the default with its accompanying inadequate certification, a cover letter to the employee's attorney with the draft stipulation extending the time to answer, and the draft answer and counterclaim. Only the motion to vacate had been filed with the court. The Palceskis later settled the lawsuit of the employee by a payment of $11,500.

In his testimony before the DEC, respondent acknowledged that although he knew that a stipulation of dismissal was necessary to have resolved the litigation once the complaint had been filed, he never obtained one. He believed that he had resolved the problem with the employee's attorneys.

The DRB agreed with the DEC that respondent's conduct displayed gross neglect and a lack of diligence from the time that he failed to file a timely answer to the complaint through his failure to act with necessary haste to vacate the default.

The dissenting members stressed respondent's continuous misrepresentations to his clients about the status of the matter both

before and after the entry of the default, and the great financial and emotional injury suffered by the clients, who had relied on respondent's false assurances that their interests were being protected. The experience was a "nightmare" for respondent's clients, who were threatened with bankruptcy and the loss of their personal assets. In the dissenters' view

> this is precisely the sort of attorney who contributes to the lamentable state of disrepute in which the attorney population has fallen, and who is responsible for the public's loss of trust in the legal profession. In order to assure the public that such conduct will never be tolerated, we believe that a period of suspension must be imposed. We would suspend this respondent for three months.

## II

We have attempted to establish over a long period of years predictable standards for the imposition of discipline in cases of attorney misconduct. On one end of the spectrum are the cases in which disbarment of an attorney will be "almost invariable." *In re Wilson*, 81 *N.J.* 451, 453, 409 *A.*2d 1153 (1979) (misappropriating client funds).

Crimes of dishonesty touch upon a central trait of character that members of the bar must possess. *In re Di Biasi*, 102 *N.J.* 152, 506 *A.*2d 719 (1986). Such crimes are defined as a "serious crime" pursuant to *Rule* 1:20–13b(2). We have repeatedly held that "when a crime of dishonesty touches upon the administration of justice," *id.* at 155, 506 *A.*2d 719, the offense "is deserving of severe sanctions and would ordinarily require disbarment." *In re Verdiramo*, 96 *N.J.* 183, 186, 475 *A.*2d 45 (1984); *In re Edson*, 108 *N.J.* 464, 530 *A.*2d 1246 (1987) (counseling client to commit perjury and lying to prosecutor). Such conduct "poisons the well of justice." *In re Pajerowski*, 156 *N.J.* 509, 721 *A.*2d 992 (1998) (quoting *In re Verdiramo, supra*, 96 *N.J.* at 185, 475 *A.*2d 45). Serious crimes not touching on the administration of justice often warrant the same penalty of disbarment. *In re Lunetta*, 118 *N.J.* 443, 572 *A.*2d 586 (1989) (conspiring to receive and sell stolen securities); *In re Mallon*, 118 *N.J.* 663, 573 *A.*2d 921 (1990) (conspiring to commit tax fraud).

Nevertheless, "even in proceedings involving 'serious crimes,' mitigating factors may justify imposition of sanctions less severe than disbarment or extended suspension." *Compare In re Imbriani*, 149 *N.J.* 521, 533, 694 *A.2d* 1030 (1997) (disbarment for engaging in numerous acts of misconduct that involved substantial amounts of money) *with In re Litwin*, 104 *N.J.* 362, 517 *A.2d* 378 (1986) (five-year suspension for arson); *In re Kushner*, 101 *N.J.* 397, 502 *A.2d* 32 (1986) (three-year suspension for false certification); *In re Labendz*, 95 *N.J.* 273, 471 *A.2d* 21 (1984) (one-year suspension for instigating fraudulent representations to federally-insured lender for the purposes of obtaining mortgage, despite excellent reputation, unblemished record and lack of personal gain); and *In re Silverman*, 80 *N.J.* 489, 404 *A.2d* 301 (1979) (eighteen-month suspension for filing false answer with the bankruptcy court to retain custody of certain assets).

Other crimes of dishonesty not touching upon the administration of justice nonetheless demonstrate an absence of character that ordinarily warrants extended periods of suspension.

■ Crimes that subvert the public policy and good order of the State will ordinarily warrant a period of suspension. *In re Kinnear*, 105 *N.J.* 391, 522 *A.2d* 414 (1987) (one-year suspension for criminal drug use); *In re Herman*, 108 *N.J.* 66, 527 *A.2d* 868 (1987) (three-year suspension for criminal sexual contact).

■ Material misrepresentations of fact in sworn affidavits will warrant a long period of suspension. *In re Lunn*, 118 *N.J.* 163, 570 *A.2d* 940 (1990) (three years). Even misrepresenting a reason for an overlooked court appearance may result in a suspension. *In re Johnson*, 102 *N.J.* 504, 509 *A.2d* 171 (1986) (three months).

■ Charges of client neglect "are serious and can have a detrimental impact on the confidence the public should have in the [b]ar of this state." *In re O'Gorman*, 99 *N.J.* 482, 492, 493 *A.2d* 1233 (1985) (citation omitted). When such ethical infractions demonstrate a pattern of neglect and of misrepresentation to clients, a period of suspension is warranted. *In re Cullen*, 112

*N.J.* 13, 20, 547 *A.*2d 697 (1988); *In re O'Gorman, supra,* 99 *N.J.* at 492, 493 *A.*2d 1233; *In re Getchius,* 88 *N.J.* 269, 276, 440 *A.*2d 1341 (1982).

We have noted, however, in such cases that "the picture presented is not that of an isolated instance of aberrant behavior unlikely to be repeated. [The attorney's] conduct over a period of years has exhibited a 'pattern of negligence or neglect in the handling of matters.'" *In re Getchius, supra,* 88 *N.J.* at 276, 440 *A.*2d 1341 (quoting *In re Fusciello,* 81 *N.J.* 307, 310, 406 *A.*2d 1316 (1979)). The *Cullen* case involved two instances of neglect; *O'Gorman* involved four instances of neglect after being suspended for five prior similar complaints; and *Getchius* involved six instances of neglect. Other cases of suspension for client neglect and misrepresentation include *In re Terner,* 120 *N.J.* 706, 577 *A.*2d 511 (1990) (three-year suspension for pattern of neglect for failure to communicate with thirteen clients despite potential mitigating factor of drug addiction, which respondent denied); *In re Stein,* 97 *N.J.* 550, 483 *A.*2d 109 (1984) (six-month suspension for "pattern of neglect" in handling three matters coupled with self-dealing in another matter); *In re Goldstaub,* 90 *N.J.* 1, 446 *A.*2d 1192 (1982) (one-year suspension for pattern of neglect involving three civil cases and one criminal case combined with long history of ethical complaints). In light of respondent's unblemished record for almost two decades, he does not fall within the end of the spectrum that warrants suspension.

### III

"[T]he principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *In re Kushner, supra,* 101 *N.J.* at 400, 502 *A.*2d 32 (quoting *In re Wilson, supra,* 81 *N.J.* at 456, 409 *A.*2d 1153). In making disciplinary decisions, we must consider the interests of the public as well as of the bar and the individual involved. *Ibid.* "The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of

all the relevant circumstances." *In re Nigohosian*, 88 *N.J.* 308, 315, 442 *A.*2d 1007 (1982). For that reason, we consider factors in mitigation of the seriousness of the offense. *In re Hughes*, 90 *N.J.* 32, 36, 446 *A.*2d 1208 (1982).

Although respondent's conduct was inexcusable in that he had compounded his initial neglect in not filing an answer with his later neglect and misrepresentation concerning his efforts to vacate the default judgment, the ethical misconduct is related to one client transaction. The closest analogous case, *In re Kantor*, 118 *N.J.* 434, 435, 572 *A.*2d 196 (1990), also involved a single failure to file an appellate brief and to represent truthfully the status of the appeal, but the one-year suspension reflected that it was conduct "viewed in combination with a prior ethics infraction and lack of mitigating factors." Generally, in the absence of conduct evidencing a disregard for the ethics system, cases involving a similar mixture of ethics infractions have resulted in a reprimand. *See, e.g., In re Onorevole*, 144 *N.J.* 477, 677 *A.*2d 210 (1996) (reprimand for gross neglect, lack of diligence, failure to communicate, failure to cooperate with disciplinary authorities and misrepresentation; attorney misrepresented to client that he had filed a complaint and that court was backlogged in filing complaints, when in fact the attorney had not filed complaint at all); *In re Horton*, 132 *N.J.* 266, 624 *A.*2d 1367 (1993) (reprimand for lack of diligence, failure to communicate, failure to provide sufficient information to allow client to make informed decisions and misrepresentation; attorney allowed appeal to be procedurally dismissed, based on his belief that he could not win appeal, first allowing his client to believe that appeal was pending and then attempting to mislead client into believing that appeal was dismissed on the merits).

"We ordinarily place great weight on the recommendation of the Disciplinary Review Board." *In re Kushner, supra,* 101 *N.J.* at 403, 502 *A.*2d 32; *see also In re Vaughn*, 123 *N.J.* 576, 589 *A.*2d 610 (1991) (adopting DRB's recommendation to reprimand publicly attorney who had failed to keep client informed,

displayed pattern of neglect and had failed to reply to DEC investigation). We greatly respect, as well, the views of the dissenting members of the DRB but believe that predictability and uniformity in the imposition of ethical decisions call for a public reprimand in these circumstances. We do not find that respondent's misconduct demonstrates dishonesty, deceit, or contempt for law, but rather an aberrational neglect of his responsibilities as an attorney. Respondent will suffer the reproach of his peers for the suffering inflicted on his client. Finally, we cannot overlook the fact that the default judgment of $1,700,000 was entered (perhaps against the wrong parties) in a case that settled for $11,500.

For all of these reasons, we conclude that the appropriate discipline is a public reprimand.

Respondent shall reimburse the Disciplinary Oversight Committee for appropriate administrative costs, including the costs of transcripts.

*For reprimand*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.

## ORDER

It is ORDERED that **ROBERT E. RIVA** of **SHORT HILLS**, who was admitted to the bar of this State in 1979, is reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.