## IN THE MATTER OF RICHARD R. STOUT, AN ATTORNEY AT LAW.

Argued November 15, 1977—Decided January 31, 1978.

*Mr. Arnold B. Levin* argued the cause for the Monmouth County Ethics Committee.

*Mr. Francis X. Crahay* argued the cause for respondent.

PER CURIAM. ▮ This disciplinary proceeding against respondent, a member of the bar of New Jersey since 1940, involves the admitted misuse of trust funds and failure to maintain a ledger book or similar record for trustee accounts as required by *R.* 1:21–6(b)(2).

Sometime prior to 1973, respondent was retained by a client in connection with a claim which she was asserting against the estate of her former employer. The matter was settled in April 1973 for $50,000 and a counsel fee of $10,000 was agreed on, payable out of the settlement money. When the check for $50,000 was received in May 1973 by respondent, he mailed it to his client in Florida with instructions to endorse it and return it to him. The covering letter stated that upon receipt of the check back, "we will forward our check to you in the amount of $40,000."

The client complied with the instructions. When respondent received the endorsed check, he immediately deposited it in his trust account but did not forward the $40,000 to his client claiming a tax problem with the Internal Revenue Service had to be worked out first.

It is unnecessary to detail the client's numerous and unsuccessful efforts to secure payment of the $40,000. Respondent kept promising her that the matter was about to be resolved and that she would receive the money shortly. On October 29, 1975, after the client, in addition to protesting about respondent's failure to remit the money, complained of financial difficulties, respondent sent a check in

the sum of $5,796 for interest earned on the settlement and assured the client that "the balance will be sent you next week."

Finally the client consulted an attorney in Florida. In April 1976 the attorney wrote respondent and demanded payment of the $40,000 with interest, and threatened a grievance complaint if the money was not received forthwith. Respondent answered on May 5, 1976 by promising to send the balance "within the next ten days."

When the money was not received, the client, by letter dated July 12, 1976, wrote to the Monmouth County Ethics Committee (Committee) complaining about respondent's failure for more than three years to remit the $40,000 to her. Apparently the Committee tried to adjust the complaint. On August 4, 1976 respondent delivered to the secretary of the Committee a covering letter and check dated May 20, 1976 payable to the client in the sum of $43,070.66 representing the proceeds of the 1973 settlement together with interest thereon, less the $5,796 interest paid in October 1975. The check and letter were forwarded to the client, but when the check was presented for payment, it was returned for insufficient funds.

█ A formal complaint charging respondent with the wrongful withholding of the settlement money was signed by the client and filed with the Committee in August, 1976. Subsequently, on September 10, 1976, respondent paid the client the $40,000 in full, together with interest, expenses and a counsel fee. By letter dated March 4, 1977 the client wrote to the Committee saying that she wished to withdraw her complaint against respondent as he had fully paid her all sums due. However, a complaint charging ethical violations may not be withdrawn and the investigation and disposition thereof terminated merely by the request of the original complainant. See *In re Rosenblatt*, 60 *N. J.* 505, 508, n. 2 (1972).

When Central Ethics received a copy of the complaint against respondent, it called for an audit of his trust

account. Upon receiving the audit dated October 1, 1976, Robert Cowen, Chief, Central Ethics, filed a second complaint with the Committee charging respondent with having misused and misappropriated trust funds and with failing to maintain a ledger book for all trustee accounts as required by *R.* 1:21–6 (b) (2).

The foregoing audit covered a period from January 1, 1973 to September 22, 1976. After noting that respondent had a trust account but did not maintain a ledger book or similar record, it showed that as of January 1, 1973, the beginning date of the audit (some five months prior to respondent's receipt of the $50,000 check), respondent's trust account was apparently "out of trust" by $43,094.45. The correctness of this statement was conceded by respondent's accountant in his testimony before the Committee. According to the audit, the balance in respondent's trust account on July 10, 1974 was $63.81 when as of that date it should have contained $65,116.72. This latter figure was disputed by respondent's accountant who maintained that the account "was out of trust at that point a total of $45,552.91."

As of the September 22, 1976 closing date, the audit showed the account to be short by $3,351.81. The accuracy of this is also disputed by respondent's accountant who reported that by that time the account had been put back in balance and actually had an excess of $254.53. In any event, when the matter was argued before this Court on November 15, 1977 it was represented by respondent's counsel that the account was in balance and respondent's trustee records were in compliance with *R.* 1:21–6 (b).

There is no dispute as to the truth of the substance of the charges filed against respondent. At the hearing before the Committee he candidly admitted that he had used clients' funds entrusted to him for his own personal purposes and conceded that in the past, his trust accounts and records had not complied with the requirements of *R.* 1:21–6 (a) and (b). He blames his admitted difficulties on a personal business venture which turned out to be a financial disaster

which was compounded by substantial State and Federal tax obligations.

Respondent is undoubtedly guilty of serious misconduct in the practice of law. However, there are some mitigating circumstances. Respondent has been forthright and truthful in his appearance before the Committee and has cooperated with the Committee's investigation. As heretofore noted, respondent has paid in full, together with interest and expenses, the $40,000 settlement money. His trust account, we are told, is now "in balance" and his trust records are in compliance with *R.* 1:21-6(a) and (b). The present ethics proceeding is the only one brought against respondent in his 38 years of practice.

In considering the extent of discipline to be imposed it is proper to look at respondent's record and reputation. *In re Wilentz*, 69 *N. J.* 121, 122 (1976); *In re Sears*, 71 *N. J.* 175, 200 (1976). Respondent has had a distinguished career in the Legislature of this State extending over some 22 years. His civic activities have been many and varied. As an attorney he has enjoyed the respect and confidence of the bar.

Discipline does not have as its primary object punishment of the offender. Its basic purpose is protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession. *In re Sears, supra* at 200. We must also see to it that public confidence in the trustworthiness of the bar as a whole is not diminished. Taking into account all of the relevant circumstances, we conclude that respondent should be suspended from the practice of law for a period of one year and until the further order of this Court. So ordered.

*For suspension for one year*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*Opposed*—None.

## ORDER

It is ORDERED that RICHARD R. STOUT of Allenhurst be suspended from the practice of law for one year and until further order of the Court, effective February 15, 1978; and it is further

ORDERED that RICHARD R. STOUT be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Supreme Court Governing Disbarred, Resigned and Suspended Attorneys.