IN THE MATTER OF LOUIS P. INTROCASO, AN ATTORNEY
AT LAW.

May 16, 1984.

## ORDER

The Disciplinary Review Board having filed a report charging
LOUIS P. INTROCASO of ALLENHURST with gross neglect,
failure to represent a client, misrepresentation and conduct
reflecting adversely on his fitness to practice, and good cause
appearing;

It is ORDERED that the findings of the Disciplinary Review
Board are hereby adopted and respondent is suspended for a
period of one year and until the further order of this Court,
effective immediately; and it is further

ORDERED that LOUIS P. INTROCASO be and hereby is
restrained and enjoined from practicing law during the period
of his suspension; and it is further

ORDERED that LOUIS P. INTROCASO reimburse the Of-
fice of Attorney Ethics for appropriate administrative costs,
including the production of transcripts; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.

## APPENDIX

### Report and Recommendation of the Disciplinary Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter is before the Board based upon a presentment filed by the District IX Ethics Committee for Monmouth County. The presentment charges the Respondent with violations of *DR* 1–102(A)(4), 6–101(A)(1) and 7–101(A)(1) for his failure to pursue a legal matter for which he was retained.

*Factual Background*

On or about February 1980, Respondent was retained by the Estate of Roy Lawn to collect a judgment of $33,000 against Dominick J. and Carmella Acerra. The judgment became uncollectible after Mr. Acerra filed a petition in bankruptcy and Mrs. Acerra was found to have no funds except for a piece of real estate.

Due to the bankruptcy petition, a mortgage foreclosure was brought against the Acerra's by a third party. Respondent received information which led him to believe that there might have been fraud in the mortgage foreclosure because the Acerra's were still in possession of the property. He communicated this to the executor of the decedent's estate, as well as to Ronald Lawn (Complainant), the decedent's son who is a member of the South Carolina Bar. The executor authorized institution of a suit in the Chancery Division of Superior Court to vacate the mortgage foreclosure. In return, Respondent was paid a $750 retainer and was to receive one-third of any recovery.

Complainant repeatedly sought a status report on the litigation, specifically requesting copies of all pleadings and interrog-

atories. These were never sent to him. Instead, on February 17, 1981, Complainant received a letter from Respondent which described the purported history of the litigation. According to Respondent, a Chancery Division action had been started, interrogatories had been sent and answered by both parties, a summary judgment motion by the defendant had been denied, a pretrial conference had been held and, finally, the Estate's complaint had been dismissed at trial for failure to meet the burden of proof. Based on this purported decision, Respondent advised against taking an appeal. Respondent also stated that all documentation of these activities had been lost when Respondent changed residences where, he claimed, the file had been kept. Respondent promised to send Complainant a copy of the file should it ever be located.

After receipt of Respondent's letter, Complainant contacted various courts in New Jersey to ascertain whether a suit had actually been filed. When his inquiries indicated that this had not been done, Complainant wrote to the Ethics Committee on May 1, 1981.

In his Answer to Complainant's letter to the Ethics Committee dated May 15, 1981, Respondent reiterated the "history" of the litigation. He then stated that his own inquiry to the Superior Court and to the trial judge had failed to yield any substantive evidence that a civil action had been filed. He promised to contact the Clerk of the Superior Court in Trenton for a copy of the complaint and all other papers filed in the matter.

As evidenced by the June 1982 communication between the Committee investigator and Respondent, one year later no proof had yet been produced that any civil action had ever commenced. Moreover, Respondent could not remember the name of his adversary in the litigation and so could not substantiate his claims through the use of his adversary's files.

The first Committee hearing was held on November 22, 1982. Respondent testified that the facts outlined in his letter of

February 17, 1981 were correct and that the civil litigation against the Acerra's had run its full course, through a decision by the Court (1T:8 *). Respondent also testified that he had been to the Superior Court at least ten times to examine their records, that he had twice contacted the trial judge who purportedly heard the case, but who now had "only the faintest recollection" of it, and that he had searched through his law diaries, all in vain (1T:8–9). Indeed, despite his efforts, Respondent could not even remember the name of the case (1T:9–11).

The hearing panel agreed to allow Respondent additional time to produce some evidence of the civil litigation on behalf of the Lawn estate. Six months later, at a second hearing, no further evidence had been produced. In the interim, the Committee investigator had written to the Chancery Division in Trenton, which informed him that no suit against the Acerra's had been filed by the Lawn Estate for the prior ten-year period (2T:6). Respondent was also unable to produce his trust account check which should have been issued to the Clerk of the Superior Court for the filing fee to initiate the suit (2T:9–11). Nevertheless, Respondent still maintained that suit had been started and tried to completion (2T:14).

At Respondent's request, the hearing panel gave him an additional thirty (30) days to provide some proof to support his contentions (2T:21–22). When no evidence was forthcoming, the panel reported its findings that Respondent violated DR 1–102(A)(4), 6–101(A)(1) and 7–101(A)(1), and a Presentment was issued.

## CONCLUSIONS AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee, in finding Respondent guilty

---

*The District Ethics Committee held two hearings on November 11, 1982 and May 23, 1982. The transcript of the first hearing is designated as 1T; the transcript of the second hearing as 2T.

of unethical conduct are fully supported by clear and convincing evidence.

The Board finds absolutely no evidence to support Respondent's bald assertion that the legal matter entrusted to him by the Lawn Estate was ever litigated or even filed against the Acerra's. For the two and a half year period during which this complaint was before the District IX Ethics Committee, Respondent was wholly unable to produce a single document in support of his claim. This lack of documentation is startling given the extent of the litigation that purportedly occurred which, unfortunately, is unsupported by anything other than Respondent's testimony. *In re Frankel*, 20 *N.J.* 588, 593–594 (1956). Not only are there no records of any kind in the Clerk's office in either Monmouth County or Trenton, but the alleged trial judge has no recollection of the case, there is no proof of payment of a filing fee in Respondent's trust records, and Respondent has forgotten the names of the case and his adversary. Indeed, the only document directly bearing on the case is a copy of the cancelled check that Complainant submitted as proof of payment for Respondent's services.

The Board is aware of the fact that Complainant did not testify at either of the hearings before the District Ethics Committee and so Respondent had no opportunity to cross-examine him. The Board finds that Complainant's testimony would have been irrelevant to the substance of the complaint. Moreover, Respondent was given more than ample opportunity to prove through other means that the subject litigation had commenced and been completed. The District Ethics Committee even made independent efforts to verify the litigation. Nevertheless, he wholly failed to do so.

Finally, the Board is troubled by the persistence with which Respondent maintains that he undertook and finished the work for which he was retained. Not only did Respondent misrepresent the status of the matter to Complainant, but he continued to do so before the District Ethics Committee as well. The Board finds Respondent's lack of candor to be contrary to his

professed cooperation with the investigation of his conduct. *In re Stout* 75 *N.J.* 321, 325 (1978).

Respondent's handling of the Lawn Estate litigation, or more specifically, his complete failure to undertake the litigation constitutes gross neglect in violation of *DR* 6–101(A), as well as failure to adequately represent a client in violation of *DR* 7–101(A). Moreover, his letter to the Complainant detailing the history of the litigation, which he reiterated under oath before the District Ethic Committee, coupled with his inability to produce even a single document to substantiate his assertions as well as his inability to recall either the caption of the case or his adversary's name, compel the conclusion that Respondent misrepresented the matter to both the Complainant and the Committee in violation of *DR* 1–102(A)(4). The totality of his conduct also reflects adversely on his fitness to practice law. *DR* 1–102(A)(6).

Whereas a term of suspension is ordinarily only recommended when there is more than one case of neglect, *In re Getchius*, 88 *N.J.* 269 (1982), Respondent's lack of candor with all parties involved mandates such discipline. For the foregoing reasons, the Board recommends that Respondent be suspended from the practice of law for a period of one year. The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs, including production of transcripts.