572 A.2d 591
IN THE MATTER OF RICHARD L. ROSENTHAL, AN
ATTORNEY AT LAW.

February 14, 1990.

ORDER

The Disciplinary Review Board having filed a report with this Court recommending that RICHARD L. ROSENTHAL of MORRIS PLAINS, who was admitted to the bar of this State in 1965, be suspended from the practice of law for one year and that his reinstatement to the practice of law be conditioned by the requirement that he practice under a proctorship for one year, the Disciplinary Review Board's recommendation being based on its determination that respondent's conduct involved numerous ethical violations, among them: 1) incidents of gross negligence, 2) the display of a pattern of negligence, 3) the failure to seek the lawful objectives of his clients, 4) the failure to carry out contracts of employment, 5) the harm suffered by his clients, 6) the failure to communicate adequately with his clients, 7) misrepresentations to his clients, 8) the failure to refund a $1,500 retainer, and 9) the failure to cooperate in the ethics proceedings, the foregoing conduct being in violation of DR 6–101(A)(1) and (2), DR 7–101(A)(1), (2), (3), and, and DR 9–102(B)(4), and good cause appearing;

It is ORDERED that the findings and recommendations of the Disciplinary Review Board are hereby adopted, and RICHARD L. ROSENTHAL is suspended from the practice of law for a period of one year and until the further order of the Court, effective February 26, 1990; and it is further

456

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said RICHARD L. ROSENTHAL as an attorney at law of the State of New Jersey; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

This matter is before the Board based upon a presentment filed by the District X (Morris County) Ethics Committee. The pertinent facts and conclusions on the three matters below, as found by the District X Ethics Committee and contained in its panel report, are as follows:

### (A) *Gof, X-84-64E*

(a) Respondent's conduct clearly constituted gross negligence in handling the matter entrusted to him. Respondent stated that he filed a Complaint. The Grievant, Inal Gof, said that Respondent had indicated that he had indeed filed the Complaint, although Mr. Gof never saw or received a copy of this Complaint. Mr. Gof inquired about the status of his Complaint on numerous subsequent occasions. Respondent's reply each time was "We are still waiting for a trial date. Call me in a few weeks." Respondent asserts the Complaint was subsequently dismissed for lack of prosecution and never reinstated. Assuming Respondent filed a Complaint on behalf of Grievant, Respondent's failure to resist the dismissal of the Complaint or vacate it once entered, thereby allowing the Statute of Limitations to run, constitutes gross negligence. *In re Goldstaub*, 90 *N.J.* 1, 446 *A.2d* 1192 (1982).

(b) The conduct of Respondent constituted a failure to act with reasonable diligence and promptness. More than 5 months elapsed after the accident before Respondent requested money to institute the court proceedings. Respondent waited for more than 18 months from the time of the accident before requesting affidavits from the automobile shop. It is not clear when, if at all,

---

* Respondent was served with notice of the Board hearing by regular and certified mail. Respondent acknowledged receipt of the certified mail, but failed to appear or to waive appearance for oral argument.

the Complaint was filed. For the next two years, Respondent indicated he was awaiting a trial date. Finally, more than 3½ years after his accident, Mr. Gof was forced to ask Respondent for his file and to release him as his attorney due to his failure to act on the case. At that time, grievant learned the Statute of Limitations served as a bar to any recovery on his part. Because of Respondent's inaction, Mr. Gof is left with absolutely no means of recovery for the damage to his sister's automobile. Respondent clearly failed to act with reasonable diligence or promptness, thus leaving his client with no way of recovering for his automobile accident.

(c) Respondent failed to reasonably inform the client about the status of the matter and failed to promptly comply with reasonable requests for information. Respondent affirmatively indicated to Grievant that the case was being processed, when, in fact, nothing was being done. On many occasions over a period of several years, Respondent indicated that he was awaiting a trial date; however, his failure to prosecute eventually led to a dismissal of the case. At some point in time after the Complaint was dismissed, Respondent continued to inform Grievant that he was awaiting a trial date. This constitutes misrepresentation. Had Respondent kept his client reasonably informed about the status of the case, Mr. Gof could have looked for recovery from one of the insurance carriers prior to the running of the Statute of Limitations. Thus, Respondent clearly violated R.P.C. 1.4 by failing to keep his client reasonably informed about the status of the case and failing to comply promptly with requests for information.

Respondent attempted to bring up a defense of emotional stress during the hearing on April 6, 1987. Affirmative defenses may be brought pursuant to R.1:20–3(i) in order to mitigate the charges. However, since respondent never filed an Answer to the Complaint, he should not have been able to raise this defense. Even if this panel determined that Respondent could properly bring this defense to their attention during the hearing, whatever emotional distress the Respondent may have been under has not been established as a factor related to the representation of Grievant.

## IV. DETERMINATION

6. The Committee has carefully considered and reviewed the testimony and evidence and has concluded that respondent's conduct was clearly unethical in that his conduct constituted gross negligence, failure to act with reasonable diligence and promptness, and failure to keep a client reasonably informed about the status of the case and to comply promptly with requests for information.

\* \* \* \* \* \* \* \*

## (B) *Colon, X–84–65E*

(a) During April 1983, David Colon, Jr., the son of David Colon, the Grievant (who was then incarcerated at the Essex County Penitentiary since January 6, 1983), retained the services of the Respondent, giving him $1,500.00 in cash.

The Grievant had been sentenced by Judge Ronco in Essex County upon a guilty plea to two gambling indictments, numbers 480–75 and 31340–80, to two 180–day terms, on January 5, 1983. Respondent did not represent him in conjunction with the pleas or sentences, but rather was expressly retained, in the words of the undated receipt he wrote out and signed, "for a motion of reduction of sentence for David Colon, Sr." (CC2 in evidence). The Grievant had recently been sentenced on a guilty plea to another gambling indictment (number 1166–82F) by Judge Donatelli in Passaic County to a 3 year term, consecutive to that imposed in Essex County, imposed in March or April, 1983. Similarly, respondent did not represent Grievant in that matter either.

(b) *Rule* 3:21–10(a) states that with certain exceptions, noted in sub-part (b), none of which seems to apply, motions to reduce or change a sentence "shall be filed not later than 60 days after the date of the judgment of conviction." Such relief is not to be granted unless done so "by order entered within 75 days from the date of the judgment of conviction and not thereafter." Under *Rule* 1:3–4(c), enlargement of these time restraints are prohibited. The defendant need not be present for the decision on any such application. *Rule* 3:16. Respondent was retained for this purpose; and not retained for an appeal of the sentence nor an application for post-conviction relief. These rules are referred to as they may provide a possible reason for Respondent's inaction, though not expressly referred to during the hearing (either by questioning or during Respondent's testimony).

(c) At no time did Respondent perform the legal services he had undertaken and was paid to perform. Beyond calling the chambers of the respective Judges and ascertaining the content of their letter responses to Grievant's letters (which apparently sought reduction of or changes to concurrent sentences), Respondent does not seem to have ever obtained the necessary information from the Grievant or others to prepare an affidavit to comply with the procedural requirements of such an application. See *Rule* 3:21–10(c). In short, no papers were ever prepared, much less filed and served. Indeed, Respondent's file was characterized by him as "minimal", containing only a few notes, and a copy of a letter alluded to below.

(d) Respondent and Grievant testified they met on two occasions at the Essex County Penitentiary. While incarcerated there, however, an incident occurred. Unbeknownst to Grievant, his niece who came to visit him Memorial Day weekend 1983 was apparently searched before the visit and a weapon was found in her possession variously described as a pellet gun, pen gun, or pistol, with one bullet or a one bullet capacity. Apparently prison officials believed this was part of a plan involving the Grievant, and he was placed in solitary confinement for 27 days; and not allowed to see any visitors, including Respondent, so Respondent testified. Grievant did not know why he was in solitary until afterwards, and denied any plan with his niece. Respondent says he sent a letter to Grievant June 2, 1983, shortly after this incident (RC–1 in evidence), which indicated, insofar as relevant, " * * * it will be a waste of time to seek a reduction in your sentence." And "I think that any Judge it (sic) will look at your record in jail and will not grant any reduction." Grievant denies receipt of this letter or, for that matter, any mail from Respondent at any time.

Moreover, Grievant recalls no conversations after this incident, either at Essex County Penitentiary or during Passaic County confinements, where Respondent indicated moving for a sentence reduction would be a waste of time. On the contrary, grievant testified Respondent told him about an October 1983 return date in Paterson, and how Grievant did not have to be present, and the "police" would charge him $200.00 for transportation if he chose to be present. Respondent testified that following the "niece incident" he felt there was "absolutely" no way to get a sentence reduction, which he regarded as a "total zero", a "totally futile effort." He agrees there was then no longer any need for his services. No offer to refund all or even part of the $1,500.00 retainer was ever made, however, despite requests by Grievant for a refund.

(e) No legal efforts on the part of Respondent played any part in Grievant's transfer from solitary to the general prison population, nor did any efforts by Respondent have anything at all to do with Grievant's ultimate parole, after serving the Essex County and Passaic County sentences, in May 1984, (following transfer from the Essex County Penitentiary to the Passaic County Jail July 27, 1983, transfer to Hopedel in Wayne 10 days later, and to Jones Farm 2½ months after that and until parole). Respondent paid visits to Grievant, whom he regarded as a nice person, at both Hopedel and Jones Farm, which Respondent agrees were more in the nature of social calls and did not involve performance of any legal services.

(f) Respondent kept no time and charge records for whatever legal services were performed, and efforts at reconstruction during the hearing itself were haphazard and inconclusive. At best, and insofar as relevant, there was a ½ to ¾ hour initial conference with Grievant's son, some telephone calls to the respective Judge's chambers, and a trip to Essex County for ¾ hour conference with Grievant and, possibly, some time spent after the "niece incident" on the telephone with Grievant's daughter and prison officials, and possibly a futile visit to the Penitentiary. We doubt this exceeded 3 or 4 hours, and thereafter there was no longer any indication on his part to move for reduction, the only purpose of his retention in the first place.

(g) Whether, as Respondent claims, he made no motion because of the "niece incident" or whether, as may be the case, he was time-barred under *Rule* 3:21–10, may have some significance. We are not persuaded that the "niece incident" constituted a valid basis for not making an application, which should have been made before that incident occurred anyway. We fail to see how fear that the niece would implicate Grievant should have been regarded as rendering any such motion futile or prevented fulfillment of the contract of employment. While the precise date of the Passaic County judgment of confinement was not presented, and vaguely referred to as having been entered in March or April 1983, with Respondent's retention occurring in April 1983, the failure to act by filing the motion before the "niece incident" at the end of May 1983 is unexplained by Respondent. We believe the time-barring effect of the rule may well provide that explanation and the inward reason for Respondent's outwardly concluding that the application would be futile due to the "niece incident".

460

## IV. DETERMINATION

6. The Committee has carefully considered and reviewed the testimony and concluded that, based upon the foregoing facts, unethical conduct has occurred in Respondent's representation of grievant. His failure to move for a sentence reduction as he contracted to do constituted gross negligence and, coupled with the other matters, evidences a pattern of neglect. Moreover, despite requests that he do so, he has returned no portion of the $1,500.00 retainer to Grievant. Finally, he refused to cooperate with the ethics investigation, but we find this was not due to any conscious and purposeful attitude of superiority or indifference, but rather part of Respondent's overall inability to come to grips with problems.

\* \* \* \* \* \* \* \*

### (C) *Heyrich, X–85–6E*

5. *Anybody Anytime.* The Hearing Panel finds that the allegations regarding *Anybody Anytime* (paragraphs 13 through 19 of the formal Complaint herein) were not proved by clear and convincing evidence. The aggrieved witness, George Heyrich, testified that in all probability, as a result of confusion in his own business office, the Respondent was never retained to represent Mr. Heyrich's company in defense of the *Anybody Anytime* Complaint.

6. *Busy Bee.*

(a) On August 18, 1983, a Complaint was filed against Mr. Heyrich and three corporations in which he had an interest. Mr. Heyrich retained Respondent to enter a defense on behalf of all the Heyrich companies and forwarded a copy of the Summons and Complaint to Respondent. A discussion was held about the allegations of the Complaint, the defenses, and a Counterclaim which Respondent agreed should be filed. Respondent did not file an Answer, Counterclaim, or any responsive pleading, the result of which was that a default judgment in the amount of $4,029.38 was entered against the Heyrich companies in October, 1983.

Approximately one month after the default judgment was entered, Heyrich learned that the Essex County Constable had levied upon his bank accounts as a result of the default judgment and informed Respondent of same. Although Respondent attempted to reassure Heyrich that his interests were being protected, in fact he had done nothing and finally admitted this to Heyrich on or about December 1, 1983.

7. *Stern.*

(a) On or about March 28, 1983, a Complaint was filed in a matter styled *Stern v. Heyrich.* Respondent was retained to represent Heyrich and his brother in that action. An Answer and Counterclaim was filed by Respondent.

Respondent essentially abandoned his clients by failing to answer Interrogatories. Ultimately, the Answer filed by Respondent and the Counterclaim filed by Respondent were stricken and a default was entered against Heyrich and his brother. The matter was scheduled for Proof Hearing and adjourned. Respondent did not inform his clients of any of the foregoing.

With the Proof Hearing scheduled for December 6, 1983, Respondent finally on December 1, 1983, informed Heyrich of the actual status of the litigation. (b) Respondent admits the foregoing allegations.

8. *Non-cooperation.* Respondent was approached by the District X Ethics · Committee numerous times by telephone and by correspondence with regard to setting up a meeting for purposes of discussing this matter. Respondent displayed a pattern of failure to return the telephone calls and failed to appear for several scheduled meetings with a representative of the Committee. Respondent finally indicated that he refused to meet with a representative of the Committee and understood the consequences of failure to cooperate.

## IV. DETERMINATION

9. The Committee has carefully considered and reviewed the testimony in evidence and has concluded that Respondent's conduct was clearly unethical in the following ways:

(a) In the *Busy Bee* and *Stern* matters Respondent was grossly negligent in allowing default judgments to be entered against his client or clients.

(b) In the *Busy Bee* and *Stern* matters Respondent failed to keep his clients informed of the status of their lawsuits, failed to diligently seek the lawful objective of his client, and failed to carry out his contract of employment.

(c) The conduct of Respondent evidenced a deliberate refusal to cooperate with the investigation conducted by the District X Ethics Committee.

The Hearing Panel has concluded that the allegations of all Three Counts of this Complaint have been proved by clear and convincing evidence.

With regard to the deliberate failure of Respondent to cooperate with the Committee, the Hearing Panel has concluded that this conduct was not motivated by "evil" intent. It appears clear that Respondent has been laboring under a psychological disability which subconsciously or unconsciously renders him incapable of dealing with major problems in his work life. Indeed, the conduct manifested by Respondent in the *Busy Bee* and *Stern* matters appeared also to be motivated by Respondent's inability to do anything other than to "run away" from difficult work situations. While the Hearing Panel finds this psychological burden should be considered in mitigation of Respondent's conduct, it does not rise to the level whereby Respondent can escape culpability from the consequences of his actions and/or inactions.

\* \* \* \* \* \* \* \*

## *Serafin Matter—X-85-17E*

Respondent was retained by grievant in a matrimonial action. The panel concluded that respondent was not guilty of any unethical conduct in this matter.

During the ethics committee hearing, respondent's clinical psychologist testified as to respondent's personality disorder,

which prevented him from doing adequate work. The psychologist testified that respondent would be able to practice law under proper supervision. This testimony was considered in mitigation by the hearing panel.

Following consideration of all matters, the panel recommended that respondent be suspended from the practice of law for six months. The panel also recommended that respondent "should not be re-admitted to the practice of law without a psychological evaluation by a competent therapist that he can function in such a manner so that his duties can be properly discharged."

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board concludes that the evidence clearly and convincingly establishes that respondent engaged in unethical conduct.

Once retained by his clients, respondent owed each of them a duty to pursue their respective interests diligently. *Matter of Smith,* 101 *N.J.* 568, 571, 503 *A.*2d 846 (1986); *Matter of Schwartz,* 99 *N.J.* 510, 518, 493 *A.*2d 1248 (1985). In *Gof,* respondent failed to prosecute a civil claim on behalf of grievant. The complaint was dismissed for lack of prosecution. In *Colon,* respondent failed to apply for a reduction of the sentence on behalf of the incarcerated grievant. In *Heyrich,* respondent, in one instance, failed to file any responsive pleadings to protect the interests of grievant and of his business enterprises. In another instance, respondent failed to answer interrogatories. In both, respondent's inaction resulted in default judgments against grievant and/or grievant's companies. The record is clear that respondent is guilty of gross negligence in the *Gof, Colon,* and *Heyrich* matters, contrary to *DR* 6–101(A)(1), and that he also exhibited a pattern of negligence, contrary to *DR* 6–101(A)(2).

In addition, in *Gof, Colon,* and *Heyrich,* respondent failed to seek the lawful objectives of his clients, contrary to *DR* 7–

101(A)(1), and failed to carry out contracts of employment, contrary to *DR* 7–101(A)(2). Respondent also prejudiced his clients in *Gof* and *Heyrich,* contrary to *DR* 7–101(A)(3). In *Gof,* grievant was foreclosed from any recovery for damage to an automobile because of the running of the statute of limitations. In *Heyrich,* two default judgments were entered against grievant and his businesses.

Respondent's unethical behavior was compounded by his failure to adequately communicate with his clients. In *Gof,* respondent failed to promptly comply with grievant's requests for information. Moreover, respondent misrepresented the status of the case by informing grievant, after the complaint had already been dismissed, that he was awaiting trial. In *Heyrich,* after entry of a default judgment in October 1983, respondent initially told grievant that his interests were protected. In December 1983, respondent finally admitted to grievant that he had done nothing to protect grievant and his business interests in two civil matters. Respondent's failure to adequately communicate with his clients in the *Gof* and *Heyrich* matters violated *DR* 7–101(A)(2). Moreover, his misrepresentations to his clients concerning the status of these matters were contrary to *DR* 1–102(A)(4). In yet another unethical display, respondent has failed to refund the $1,500 retainer to grievant in the *Colon* matter, contrary to *DR* 9–102(B)(4).

As to the *Serafin* matter, the Board agrees with the committee that there is no clear and convincing evidence of unethical conduct on the part of respondent.

Respondent's unethical behavior in the above matters was compounded by his disregard for the ethics proceedings. In the *Gof* and *Heyrich* matters, respondent failed to file answers to the formal ethics complaints, pursuant to *R.* 1:20–3(i). "An ethics complaint should be considered—as it certainly is by the vast majority of all practicing attorneys—as entitled to a priority over any other matter the lawyer may have in hand that can probably be postponed." *In re Kern,* 68 *N.J.* 325, 326, 345 *A.*2d

321 (1975). Moreover, respondent refused to cooperate with the ethics committee's investigation of the *Gof* and *Heyrich* matters. Even though respondent did appear at the ethics hearings, he failed to appear before this Board, despite proper notice of its hearing. Respondent had the obligation to fully cooperate with the ethics authorities. *Matter of Smith,* 101 *N.J.* 568, 572, 503 *A.*2d 846 (1986); *Matter of Winberry,* 101 *N.J.* 557, 566, 503 *A.*2d 306 (1986). His failure to so cooperate is viewed by the Board as an aggravating factor.

A further aggravating factor is respondent's previous misconduct. *In re Rosenthal,* 90 *N.J.* 12, 446 *A.*2d 1198 (1982). In that case, respondent was publicly reprimanded for his failure to act competently and to represent two clients zealously. It is clear that respondent has failed to conform to the standards required of the profession, even after the imposition of discipline for prior ethics transgressions.

There are numerous instances where a pattern of neglect, in conjunction with other ethics violations, has warranted a lengthy suspension from the practice of law. *See, e.g., Matter of Templin,* 101 *N.J.* 337, 502 *A.*2d 1 (1985) (attorney's pattern of negligence, failure to carry out contracts of employment, failure to communicate with clients, and failure to cooperate with the ethics committee warranted a one-year suspension); *In re Ackerman,* 95 *N.J.* 147, 469 *A.*2d 924 (1984) (previously disciplined attorney's pattern of neglect, misrepresentations, failure to communicate, and failure to cooperate with ethics committee's investigation resulted in a two-year suspension). *See, also, Matter of Gill,* 114 *N.J.* 246, 553 *A.*2d 1337 (1989); *Matter of Templeton,* 99 *N.J.* 365, 492 *A.*2d 1001 (1985); *Matter of O'Gorman,* 99 *N.J.* 482, 493 *A.*2d 1233 (1985).

The purpose of discipline, however, is not the punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession." *In re Getchius,* 88 *N.J.* 269, 276, 440 *A.*2d 1341 (1982), citing *In re*

*Stout,* 75 *N.J.* 321, 325, 382 *A.*2d 630 (1978). "The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian,* 88 *N.J.* 308, 315, 442 *A.*2d 1007 (1982). Mitigating facts are, therefore, relevant. *In re Hughes,* 90 *N.J.* 32, 36, 446 *A.*2d 1208 (1982).

In mitigation, the Board considered the testimony of respondent's psychologist, who began treating respondent in September 1986. The psychologist testified that respondent's personality disorders contributed to his unethical conduct, but that he is extremely motivated to overcome his difficulties. The Board finds nonetheless that, although respondent's psychological problems may mitigate the severity of discipline to be imposed, these problems do not excuse him from his repeated and various displays of unethical behavior.

The Board concludes that respondent's serious and repetitive unethical conduct and the aggravating factors noted above, balanced with the mitigating factor of respondent's psychological problems, require a suspension for one year. Absent these proven psychological problems, a lengthier suspension would have been appropriate.

The Board, therefore, unanimously recommends that respondent be suspended from the practice of law for a period of one year. In addition, the Board recommends that, prior to reinstatement, respondent be required to produce psychiatric proof of his fitness to practice law. As a further condition of reinstatement, the Board recommends that respondent provide full restitution to grievant in the *Colon* matter. The Board further recommends that, once reinstated, respondent practice under the supervision of a proctor approved by the Office of Attorney Ethics for a period of one year.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.